### A. L. Morgan v. Dan White et al.

Decided April 22, 1908.

**1.—Limitation—Adverse Possession—Title in State.**

The fact that one in possession of land adversely to the true owner holds it under the mistaken belief that the title is in the State, and with the intention of acquiring it from the State, will not preclude him from getting title by limitation against the true owner.

**2.—Same—Title Perfected.**

One who had acquired full title to land by limitation would not defeat the right so gained by afterwards conceiving a mistaken belief that the title

had never passed out of the State, though it should be held that possession under such belief could not be a basis for limitation.

**3.—Adverse Possession—Tenants in Common.**

The conveyance of land by one whose interest or connection with the title does not appear does not place the grantee, taking possession and holding under such deed purporting to convey the sole title, in the position of a tenant in common with other parties who own an undivided interest; his possession is not, on its face, that of a co-tenant, and no repudiation of co-tenancy, brought to the knowledge of the part owners, is necessary in order to entitle him to claim limitation against them.

**4.—Same—Recorded Deed.**

The possession of land under a recorded deed purporting to convey the entire title within certain metes and bounds is notice to owners of an undivided interest in such land that the possessor claims adversely to them, and not as their co-tenant.

Appeal from the District Court of Upshur County. Tried below before Hon. R. W. Simpson.

*Barnwell & Eberhart* and *Warren & Briggs,* for appellant.—Possession of land for no length of time will ripen into title, when party in possession does not claim title against the world, and in this case the plaintiffs, and those under whom they claim, never claimed the land adversely to the true owners, but recognized the title as outstanding or in the State. Schleicher v. Gatlin, 85 Texas, 273; Norton v. Collins, 1 Texas Civ. App., 276.

The plaintiffs, being tenants in common with the other owners, to wit: the heirs of James and Warwick Whetstone, their possession was the possession of all, and limitation would not run against such heirs, until notice that the possession is adverse was brought home to them. Moody v. Butler, 63 Texas, 210; Phillipson v. Flynn, 83 Texas, 583.

*W. R. Stephens* and *Gaines B. Turner,* for appellees.

RICE, ASSOCIATE JUSTICE.—Appellees filed this suit in trespass to try title against appellant in the District Court of Upshur County on the 4th day of April, 1905, for title and possession of 320 acres of land, known as the H. T. McDonald survey in said county. The first count in appellees' petition is in the usual and regular form of trespass to try title. In the second count they allege their relationship to David White and Mrs. L. E. (F. W.) White to be that of children and grand-children, and that as such they were the only legal heirs of said David White and his wife L. E. White, and as such inherited such title as their ancestors had in said tract of land. They also plead title by limitation of three, five and ten years; and likewise alleged that they and those under whom they claim held possession under a written muniment of title specifying the boundaries of the tract of land in question, which was duly recorded in the deed records of Upshur County, Texas.

The appellant, defendant in the court below, disclaimed as to that portion of the land conveyed by him to Mrs. Joan White, one of the plaintiffs, referring to deed for description, and plead not guilty as to the balance; also plead the statute of ten years limitation as to

160 acres of the land in controversy, an equitable title to said 160 acres, and improvements thereon in good faith.

J. M. Perdue intervened in the case, claiming title to 12 acres of the land in controversy, alleging that the same was conveyed to him by Mrs. L. E. White, mother of plaintiffs, but that deed thereto was lost; also plead title by limitation of ten years to said 12 acres.

The plaintiffs filed a supplemental petition setting up several special exceptions, but as the same were overruled and no point is made thereon by cross assignment, it will not be necessary to notice same.

Trial was had before a jury, but after the conclusion of the evidence, the court directed a verdict for the plaintiffs and intervener, and verdict and judgment was rendered in accordance therewith, from which judgment appellant has prosecuted this appeal.

It is urged by appellant under his first assignment of error that the court erred in giving a peremptory charge to find for the plaintiffs and intervener, for the reason, among others, that the evidence showed that plaintiffs and those under whom they claim, never did have or acquire any title to the land in controversy under their plea of limitation; in effect, insisting that plaintiffs at all times recognized the title to said land as being defective and in someone else, and held themselves ready to purchase the real title to the same whenever the owners were found; and their possession was never at any time of a character which would ripen into a title, because said possession was not open and adverse, as against the world and the real owners of said land, but was subject thereto whenever found, plaintiffs recognizing the title as outstanding or in the State.

It appears from the record that David and Mrs. L. E. White, who were the father and mother and the grandfather and grandmother of the plaintiffs, settled upon this land some time prior to 1853, and were living upon the same as their home, having erected a log house thereon, and cleared some ten or twelve acres of the land, which had been put in cultivation, and continued to live together thereon until 1861, when David White went to the War, from whence he never returned. Mrs. White, wife of David White, and the mother and grandmother of the plaintiffs, together with her children, continuously lived upon this land from the time that David White left for the War until she died in September, 1902. She raised all of her children upon the premises, and from time to time cleared more of the land, putting same in cultivation. She cultivated the land herself with the assistance of her children, and after the War built another log house, and later on, a frame house. Two of her daughters who afterwards married, lived on the premises and worked a part of the land. Mrs. Haynes, one of said daughters, lived in the house with her mother for 20 or 30 years; she and her children assisted in making a crop on the premises every year until about 1897 or 1898, when J. M. Roach, who had married one of Mrs. White's daughters, moved on the premises, at which time Mrs. Haynes left but her mother remained. Roach's wife died shortly before he moved on the premises, and Roach moved in the house with Mrs. White and continued to live upon the premises until the year 1903. Appellant moved on the premises about the time or shortly after Roach moved away. On August 30th, 1852,

B. N. Hampton conveyed to David White the land in controversy by metes and bounds, which deed was duly acknowledged and filed for record on the second day of September, 1852, and was duly recorded in the deed records of Upshur County, Texas, on the 19th of October next thereafter.

It was further shown that from 1848 up to and including the year 1861, the taxes upon said premises were paid by David White; and from 1861 up to and including the year 1880, Mrs. L. E. White alone paid the taxes, and from that year until 1897, she paid on 160 acres, and in 1889 J. M. Roach paid on 149 acres. It was shown that some time in the '70's Americus White and J. M. Roach, the former a son, and the latter a son-in-law, of David White, went to Marshall for the purpose of looking up the title of the H. T. McDonald survey, and when they returned they reported that they could not find any title or procure any other title; and it was also shown that they together with Mrs. L. E. White, at different times, made statements that they regarded the land as vacant or belonging to the State. It was also shown that some time in 1882 or 1883, the tract of land was surveyed at the instance of some one or more of the plaintiffs, with a view of preempting the same, but nothing further was done after the survey was made. Along about this time or afterwards, Mrs. White and others were shown to have said that they knew the title to the land was bad; but from all the evidence it clearly appears that they predicated this opinion upon the erroneous belief that the land was vacant or the title in the State. Roach, who is shown in 1897 or 1898 to have moved upon the premises, and lived with his mother-in-law until her death in 1902, conveyed in 1903, by quitclaim deed, 160 acres, a part of land in controversy, to appellant, who went into possession by virtue of said conveyance soon thereafter, and was in possession at the time of the institution of this suit.

There was nothing in the evidence indicating any ouster of Mrs. L. E. White during her lifetime; but she remained on the premises until her death which occurred in 1902.

It was shown that Perdue, by purchase from Mrs. L. E. White, with consent of the children, some time about 1868 or 1869, acquired 12 acres out of the northeast corner of the survey, but that his deed for same had been lost; and it further appears that the entire tract so purchased by him had been enclosed and in his possession, using, occupying and enjoying the same for a period of twelve years prior to the institution of this suit.

Appellant contends that under the doctrine announced in Schleicher v. Gatlin, 85 Texas, 273, and Norton v. Collins, 1 Texas Civ. App., 276, title by limitation can not be relied upon where the parties pleading the same were shown to have been laboring under the mistaken belief that the title to the land which they claimed was in the State. The doctrine announced in those cases is not the law and has been expressly overruled. In the case of Converse v. Ringer, 6 Texas Civ. App., 58, Chief Justice Fisher, in an able and elaborate opinion, discussing this exact phase of the case, held that a party who went into possession of land under the mistaken belief that it was vacant, and

with the intention to acquire title from the State under the homestead or preemption laws, and who for a period of ten years held adverse possession of said land as against the true owner, could prescribe title under the ten years' statute of limitations. And in Longley v. Warren, 11 Texas Civ. App., 269, Judge Stephens held that one settling on land to acquire it under the homestead statute, erroneously believing it to be vacant public land, may by such occupancy acquire title by adverse possession against the true owner, discussing with approval the doctrine announced in Converse v. Ringer, supra. Since that time we understand this to be regarded as the settled law upon this subject. But, apart from this view of the case, we think the title by limitation was complete and perfect in appellees long before it was shown that they had expressed any doubt with reference to the same being bad. It appears from the evidence that the trip to Marshall was not made until late in the 70's; and the survey which was made with a view of preempting the land, was not made until 1882, whereas the evidence shows that David White settled upon the land possibly as early as 1848, at least, taxes were paid thereon from that time until 1861 by him, and thereafter for many years by his widow, and that he and his family lived thereon at least from 1853 until his death some time in the early 60's, and that his widow and children continued to live there until the time of the death of Mrs. White in 1902, so that a period of more than ten years occupancy, using, cultivating and enjoying the same, and paying taxes thereon under a deed duly recorded, is shown before any misgivings or intimations by any one of them were made to the effect that their title was defective. It has been held that when title is acquired under the statute of limitation, the same is not affected by loss of possession (Spofford v. Bennett, 55 Texas, 293.) And in Branch v. Baker, 70 Texas, 190, it was held that when a period of limitation has fully run in favor of an adverse possessor of land, it confers title upon him which he may assert against the former owner, though his possession ceased after his title by limitation was acquired. So that it would appear to us that if the title by limitation had fully enured to appellees long prior to the time that they or any of them were shown to have expressed doubts concerning the same, or to have done anything indicating their belief that the same was defective, this could not be held in derogation of and certainly it could not defeat the title which had already been acquired by limitation. We therefore overrule this assignment.

By his second assignment appellant contends that the court erred in overruling his motion for new trial, because he claims the evidence showed that plaintiffs and defendant were tenants in common, plaintiffs owning one-third and the defendant two-thirds of said land; and that the evidence showed that the plaintiffs acquired title to said one-third by deed from B. N. Hampton, and that the defendant acquired title to two-thirds of the same by purchase from the heirs of Peter Whetstone; and contended by his propositions thereunder that plaintiffs being tenants in common with the heirs of James and Warwick Whetstone, their possession was the possession of all and limitation did not run against said heirs until notice of adverse possession was brought home to them. The record title introduced by both par-

ties, in effect, showed that appellant had purchased and owned, by mesne conveyances, the title of James and Warwick Whetstone, who were the sons of Peter Whetstone; and it was also shown that the certificate to the McDonald survey was issued to Bailey Anderson, the administrator of the estate of H. T. McDonald, deceased, and that thereafter Anderson conveyed the certificate to Peter Whetstone, but no authority is shown for said conveyance. It was also shown that Polly Whetstone, who afterwards became the wife of B. N. Hampton, was the sister of James and Warwick Whetstone, and the daughter of Peter Whetstone, but that the said Polly Hampton died sometime in the 50's.

There is nothing in the evidence indicating how Hampton obtained the land which he conveyed to David White. The conveyance from Hampton to White contains no recitations showing how he obtained the title thereto, so that under the evidence disclosed by the record we can not hold that Hampton and James and Warwick Whetstone held the land as tenants in common, as contended by appellant; and that therefore, his conveyance to White could not make White a tenant in common with said James and Warwick Whetstone. But, if this contention were conceded, still it appears to us that appellant's claim that limitation had not run against James and Warwick Whetstone can not be sustained, because it appears from the evidence that the conveyance from Hampton to White described the land by metes and bounds, and was immediately thereafter duly recorded in the deed records of Upshur County, and under the facts heretofore recited, showing that White and his wife with their family, had lived upon the land as a home, cultivating, using and enjoying the same for a period of more than 50 years, claiming the same adversely, would be sufficient to put the statute of limitation in operation, even as against tenants in common. Possession and the record of the deed was sufficient notice of the adverse holding by appellees. In Puckett v. McDaniel, 8 Texas Civ. App., 634, it was held that the possession of one tenant in common, asserting exclusive right to the land under a deed conveying the land to him by specific description, is adverse to his cotenants having notice of the deed; and the registration of a deed under which a tenant in common claims exclusive right to the land *is notice thereof to his cotenants.* See this case for other cases cited sustaining the doctrine above announced. See also Church v. Waggoner, 78 Texas, 201.

Believing that the trial court did not err in instructing a verdict for appellees, the judgment of the court below is in all things affirmed.

*Affirmed.*

Writ of error refused.