CARR et al. v. ALEXANDER et al.

(Court of Civil Appeals of Texas. Austin. May 15, 1912. On Motion for Rehearing, June 26, 1912.)

1. QUIETING TITLE (§ 10*)—TITLE TO SUPPORT ACTION—ADVERSE POSSESSION.
Where the petition, in an action to quiet title, asserted a good cause of action based upon title under the 10-year statute of limitations, a general demurrer to it was properly overruled.
[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 36–42; Dec. Dig. § 10.*]

2. ADVERSE POSSESSION (§ 33*)—EVIDENCE—DEEDS.
On the issue of title by adverse possession, deeds of married women, which were ineffective because not acknowledged as required by law, were admissible in evidence to shed light upon the nature of the possession of the grantees.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 134, 135; Dec. Dig. § 33.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.
The admission in evidence of a bond for title in an action to recover land was harmless, where the result of the trial would not have been different had it been excluded.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4157, 4166; Dec. Dig. § 1050.*]

4. ADVERSE POSSESSION (§ 85*)—EVIDENCE—ADMISSIBILITY—DEEDS.
Deeds, whereby the grantors undertook to convey to others at least one-half of the entire tract of land sought to be recovered, were admissible in evidence as tending to show that grantors intended their possession to be adverse to every one, including their cotenant.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 498–503, 656, 657, 660, 668; Dec. Dig. § 85.*]

5. TENANCY IN COMMON (§ 15*)—EVIDENCE—SUFFICIENCY.
Evidence, in an action to recover land, held sufficient to show ouster of a cotenant and to establish an open, notorious, and adverse possession sufficient to establish title in plaintiffs under the 10-year statutory limitation.
[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

6. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION—NOTORIETY OF POSSESSION.
Possession and assertion of exclusive ownership may be so notorious and long continued as to constitute notice of adverse possession to a cotenant, though there is no actual notice thereof given the cotenant.
[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

On Motion for Rehearing.

7. ADVERSE POSSESSION (§ 47*)—INTERRUPTION OF POSSESSION—CLAIM BY OWNER.
The mere assertion by the owner of a claim to land adversely held, not made by suit against the adverse holder, will not prevent the statute of limitations from running.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 234, 235; Dec. Dig. § 47.*]

8. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION—NOTICE TO COTENANT—RECORDED DEED.
A recorded deed to a portion of a tract of land, together with the grantors' continued possession of the remainder of the tract, was notice to a cotenant of the grantors that they were asserting adverse claim to the entire tract, and made their possession open, notorious, and adverse as to the cotenant.
[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

Appeal from District Court, Williamson County; Chas. A. Wilcox, Judge.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Action by A. Alexander and others against Sarah Carr and others. From the judgment rendered, defendants appeal. Affirmed.

W. M. Allison and C. L. Harty, both of Georgetown, for appellants. Mantor & Briggs and T. J. Lawhon, all of Taylor, for appellees.

KEY, C. J. On May 17, 1910, A. Alexander instituted this suit against Sarah Carr and her husband, T. M. Carr, for the recovery of 183½ acres of land out of a 400-acre tract off of the north end of the Jefferson West survey, situated in Williamson county, and for a decree removing cloud and quieting title. Among other matters the plaintiff pleaded title by limitation. The defendants' answer contained a general demurrer, general denial, plea of not guilty and plea of non est factum as to a certain deed, and a special plea alleging that the 400 acres of land referred to in the plaintiff's petition was owned jointly and as cotenants by the defendant Sarah Carr and Elizabeth Arledge, and that the plaintiff was claiming title under the latter; and the defendants made Elizabeth Arledge, H. F. Ryals, and C. H. Windemeyer parties, and set up a cross-action against them and the plaintiff, whereby they sought to have Mrs. Carr's right to recover an undivided half of the 400 acres established and to have a partition. The defendants Ryals and Windemeyer filed answers, in which the former claimed title to 150 acres and the latter to 50 acres, each specially pleading their title under the five and ten year statutes of limitation. The Carrs filed a supplemental answer in reply to the plaintiff's plea of title by limitation, setting up the coverture of Sarah Carr, tenancy in common, and negativing any disseisin or ouster. Upon the several issues thus presented the case was submitted to the trial court without a jury, and judgment rendered for the plaintiff Alexander for the 183½ acres of land sued for by him, and for the defendants Ryals and Windemeyer, respectively, for the lands claimed by them, and that Elizabeth Arledge go hence and recover costs, and that the Carrs take nothing and pay all costs, and the latter have prosecuted this appeal.

The trial judge filed the following findings of fact and conclusions of law, which are supported by the testimony and adopted by this court:

### "Findings of Fact.

"(1) I find that the 400 acres of land out of the Jefferson West survey in Williamson county, Tex., described in defendant Carr's cross-action, and which includes the 183½ acres sued for by the plaintiff Alexander, was conveyed by Jefferson West to John Barclay as administrator of the heirs of Matthais Prewitt, on December 6, 1852.

"(2) I find that the said Matthias Prewitt died prior to the year 1852, leaving surviving him his wife, Mrs. Eliza Prewitt, and two daughters, Jane (who married John Barclay) and Elizabeth (who married M. D. Arledge); that John Barclay, the husband of the said Jane Barclay, died in October, 1856, and the said Jane Barclay died in the year 1881, leaving her two children, to wit, one daughter, the defendant Mrs. Sarah Carr, and one son, Mack Barclay; that the son died in 1907, without having been married and leaving no issue; that the defendant Mrs. Sarah Carr was married to Thomas Carr in the year 1867, and before the death of her mother Mrs. John Barclay; that the said M. D. Arledge died on the ———— day of July, 1910.

"(3) I find that on the 7th day of March, 1855, the said John Barclay and wife, Jane Barclay, executed a deed to Moses D. Arledge, purporting to convey to said Arledge a portion of said 400 acres of land, and that on October 30, 1868, Eliza Mays, formerly Eliza Prewitt, executed a deed to Elizabeth Arledge, purporting to convey an interest in said 400 acres of land; said two deeds being of the terms and tenor as shown by the statement of facts. The said two deeds were not acknowledged and were never recorded.

"(4) I find that some time, about the year 1866, the said M. D. Arledge and his wife, Elizabeth Arledge, moved upon said 400-acre tract of land and made some improvements thereon and placed a portion of same in cultivation, and resided upon and occupied said land continuously from said date down to the present time, with the exception of the following intervals, to wit: On one occasion, shortly after moving upon said place, the said Arledge and wife removed to the Hamilton place on account of the health of the family and there resided about one year; on another occasion during their early occupancy of said 400 acres they moved to a place near Beaukiss for a portion of a year for the purpose of sending their children to school, leaving said 400 acres in the possession of one of their sons; and that about three years before the institution of this suit, said Arledge and his wife, being old and feeble, lived for one year with or near a daughter, leaving the land in controversy in the possession of tenants.

"(5) I find that, from the date of the execution of the deeds by Mrs. Mays and Mrs. Barclay to them, the said Arledge and his wife believed that they held and owned the title to said entire 400 acres of land; that they openly claimed the entire 400 acres as their own, and never at any time admitted the existence of any interest or title of any character in any other person; that said land was commonly known in the community as belonging to said Arledges; that the Arledges on several occasions attempted to sell the same and offered same for sale;

that they had the exclusive occupancy, use, and control of same, collecting and using all of the rents and revenues thereof, and paying all taxes due on same.

"(6) I find: That on November 22, 1877, said M. D. Arledge and wife, Elizabeth Arledge, conveyed to W. A. Arledge 50 acres out of the northeast corner of said 400-acre tract, by metes and bounds; the deed conveying same being placed of record. That the said W. A. Arledge entered into possession of same, placed a portion of said land in cultivation, and erected improvements thereon. That he and his vendees have continuously claimed and occupied the same from the date of said deed down to this time. That some of the later conveyances of said 50 acres contain the recitation that said tract contained 54 acres. That on said November 22, 1877, the said M. D. Arledge and Elizabeth Arledge conveyed to Mary Ann Brymer, by metes and bounds, 50 acres out of the northwest corner of said 400-acre tract; said deed of conveyance being placed of record. That the said Mary Ann Brymer entered into possession of same, placed a portion of said land in cultivation, and erected improvements thereon, and that she and her vendees have continuously claimed and occupied the same from the date of said deed down to this time. That on November 29, 1879, the said M. D. Arledge and Elizabeth Arledge conveyed to ―――― McGinnis, by metes and bounds, 100 acres off of the south end of said 400-acre tract; the deed conveying same being placed of record. That the said ―――― McGinnis entered into possession of the same, placed a portion of said land in cultivation, and erected improvements thereon, and that he and his vendees have continuously claimed and occupied the same from the date of said deed down to this time.

"(7) I find that after executing the above conveyance, which conveyed at least one-half of said 400-acre tract, the said M. D. Arledge and Elizabeth Arledge continued to reside upon and occupy the remaining portion of said 400-acre tract, using, cultivating, and enjoying the rents and revenues thereof, and claim title to same.

"(8) I find that a portion of said land was improved and fenced at the time the said M. D. Arledge and Elizabeth Arledge first occupied the same, and that other improvements were afterwards made, but that said tract of land was not entirely fenced until the year 1892 or 1893, at which latter date all of said land was fenced and the said tract of 183½ acres sued for by plaintiff was on said date fenced off to itself and completely inclosed, and that from said date down to the institution of this suit the said M. D. Arledge and his said wife, Elizabeth Arledge, continued to occupy all of said 400 acres of land that had not theretofore been sold, holding the peaceable, adverse, and exclusive possession thereof, cultivating, using,

and enjoying the same and claiming title to same.

"(9) I find that since the year 1868 the said John Barclay, nor his wife Jane Barclay, nor Mrs. Eliza (afterwards Eliza Mays), nor the defendants Thomas Carr and Sarah Carr, have ever asserted any right, title, claim, or interest in or to said tract of 400 acres of land until the latter part of the year 1909, at which time the defendants Carr were requested to sign a deed conveying their apparent interest in said land to the Arledges, whereupon they asserted title to an interest in same and refused to sign said deed.

### "Conclusions of Law.

"I conclude that the character of use, possession, and claim of title of the said M. D. Arledge and Elizabeth Arledge, and the circumstances surrounding same, as shown by the findings of fact for the long period set out therein, together with the sale of at least one-half of said tract of land by metes and bounds, and the record of the deeds whereby said one-half was sold, and the continued exclusive occupation by the Arledges of the remaining one-half of said land, constitute notice to the defendant Carr of the Arledges' adverse claim of title, and that all the right, title, and interest of the said defendants in and to said tract of land was barred by the 10-year statute of limitation before the institution of this suit, and that therefore the plaintiff is entitled to recover as prayed for in his petition, and that the defendants Carr shall take nothing by their cross-action.

"C. A. Wilcox, District Judge."

### Opinion.

[1] Appellants' first assignment of error is addressed to the action of the trial court in overruling their general demurrer to the plaintiffs' petition. Undoubtedly, the petition asserted a good cause of action, based upon title under the 10-year statute of limitation, and therefore no error was committed in overruling the general demurrer. Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 508.

[2] Under appellants' second and third assignments, it is contended that the trial court should have sustained objections and excluded the deeds referred to in the third finding of fact, because it was shown that the grantors, Jane Barclay and Eliza Mays, were married women at the time they signed the deeds, and those instruments were not acknowledged, as required by law in order to render them effective as deeds. The record shows that the trial court did not admit them as muniments of title, but as circumstances or evidence shedding some light upon the nature of the possession held by Moses D. Arledge and his wife for a long period of time stated in the fourth finding, and we hold that that ruling was correct.

[3] And the same may be said in reference to the fourth assignment, which complains of the admission in evidence of a bond for title, executed in 1841 by Matthias Prewitt to one A. G. Parker. If it be true that the instrument referred to could have but little, if any, bearing upon any question in the case; still, considering all the other testimony and the sole issue upon which the case was decided, we do not think the case should be reversed simply because of the admission of that immaterial document. It is not probable that its exclusion would have resulted in any other disposition of the case, and therefore we decline to reverse on account of its admission, even conceding that it was immaterial.

[4] Under the fifth assignment, appellants contend that error was committed by the admission in evidence of deeds showing that M. D. Arledge and his wife had conveyed to W. A. Arledge 50 acres out of the northeast corner of the 400-acre tract in 1877, and 50 acres to Mary Brymer out of the northwest corner in 1887, and 100 acres off of the south end of the 400-acre tract to O. H. P. and J. J. McGinnis in 1879. The deeds referred to, as well as others conveying some of the same lands to other parties, and the registration of those deeds, were circumstances proper to be considered in determining the nature of the possession held by M. D. Arledge and his wife. In other words, appellants are contending that the possession of the entire 400-acre tract by Arledge and his wife, who owned a half interest, did not constitute disseisin or ouster of Mrs. Carr, who owned the other undivided one-half of the land, and was therefore a cotenant. Conceding the fact of such cotenancy, proof that the Arledges undertook to convey to others at least half of the entire tract and continued to occupy and use the remainder were circumstances tending to show that their possession was intended to be adverse against every one, including their cotenant Mrs. Carr.

[5] The other assignments present questions similar to the one just considered, and under them it is strenuously contended that the testimony fails to meet the requirements as to ouster of a cotenant, and therefore does not support the conclusion that Mrs. Carr's right was barred by the statute of limitation.

[6] We think the testimony supports the trial court's findings of fact in that respect; and we hold that, in order to constitute disseisin or ouster of a cotenant, it is not necessary that actual knowledge of the fact that possession is intended to be adverse to such cotenant must be brought home to him. Possession and assertion of exclusive ownership may be so notorious and long continued as to constitute notice to a cotenant of adverse possession. Alexander v. Kennedy, 19 Tex. 492, 70 Am. Dec. 358; Humphreys v. Edwards, 89 Tex. 512, 36 S. W. 335, 434; 38 Cyc. p. 37. The adverse possession, use, and assertion of exclusive right may be so notorious as to constitute notice, even to a nonresident cotenant. Honea v. Arledge, supra; Oil Co. v. Burnham, 124 S. W. 225. In the case at bar there is nothing to indicate that, when M. D. Arledge and his wife took possession of the land 40 years ago, they did so as cotenants and recognizing any right in appellants. On the contrary, the proof indicates that from that time on until the remaining 183½ acres of it were sold to the plaintiff in 1909, the possession of the Arledges was adverse to everybody, including the appellants. They used it as their own; they offered to sell the entire tract; they sold to others all except 183½ acres now in controversy more than 10 years before the commencement of this litigation. The undisputed proof shows that the last time the Carrs were upon the land in controversy was when they visited M. D. Arledge and his wife in 1887; and, if the trial court accepted the testimony of Mrs. Arledge as true, neither of them on that occasion asserted any claim to the Arledges to any interest in a portion of the land. Nor was it shown that on any other occasion they ever controverted the exclusive right asserted by the Arledges to the entire 400 acres. It was not shown that the Carrs ever paid any taxes on the land nor was it shown that they ever took such steps, as might reasonably be expected, to maintain and protect their interest as cotenants, and they admitted in open court that Windemeyer and Ryals, who held under the Arledges, had title by limitation.

Therefore, after carefully considering the testimony, we have reached the conclusion that the learned trial judge was correct in holding that the plaintiff Alexander, who had acquired the Arledge title, had established his plea of title under the ten years statute of limitation, and was entitled to the judgment rendered in his favor, which judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellants have presented a motion for a rehearing in this case and a request that this court make numerous findings of fact, and, after due consideration, we have reached the conclusion that both motions should be overruled. As to nearly all of the findings requested, we deem it proper to say that there is no conflict in the testimony; and this is especially true as to the facts showing that limitation did not begin to run against Mrs. Carr and those from whom she inherited title until 1896, when the statute was amended so as to include married women among those whose rights would be barred by the several provisions of the statute of limitations; and we here distinctly

concede and state that appellee's title, which rests alone upon limitation, must be based upon ouster of a co-owner, and adverse possession for a period of 10 years. In other words, the rules of law just stated are those that should have been, and that in fact were, applied in the court below; and appellants are not entitled to have the judgment reversed, unless they have shown, under a proper assignment of error, that some material finding of the trial court is not supported by testimony. The findings referred to are set out in our original opinion, and need not be here repeated. The only assignments presented in appellant's brief which charged that any findings of the trial court are not supported by testimony are No. 5a and No. 10. Assignment No. 5a complains of the court's finding No. 3 "that John Barclay and wife, Jane Barclay, executed a deed to Moses D. Arledge on March 7, 1855, conveying a part of the 400 acres of land in controversy." The assignment states two reasons why the court erred in making that finding, the first, being that the land was the separate property of a married woman, and the deed was void because it was not acknowledged, and, second, it did not purport to convey any portion of the 183½ acres sued for by the plaintiff. Under that assignment appellant submits but one proposition, which is that the court erred in making the finding referred to, because the deed referred to was absolutely void. The trial court did not find, as stated in the assignment, that the deed mentioned conveyed any land, but found that it purported to convey "an interest in said 400 acres of land." The testimony sustained that finding, and the record shows that the deed mentioned was not admitted in evidence as a muniment of title, but merely as a circumstance tending to explain the nature and extent of the claim thereafter asserted by Mr. and Mrs. Arledge.

The tenth assignment charges that the ninth finding of fact, to the effect that since 1868 neither appellants nor those under whom they claim had asserted any right, title, claim, or interest in the 400 acres of land until the latter part of the year 1909, at which time the Carrs were requested to sign a deed conveying their apparent interest to the Arledges, whereupon they asserted title to an interest in the land and refused to sign the deed. The assignment charges error in that finding upon the contention that the uncontroverted evidence of both of appellants shows that they had never heard of the unacknowledged and unrecorded instruments claimed to be deeds from Mrs. Eliza Mays and John and Jane Barclay; and that, while they permitted Elizabeth Arledge to occupy and use all of said land, an undivided one-half interest therein was affirmatively and continuously claimed by Sarah Carr, and that she never heard of her title thereto being called in question, until a short time prior to the filing of this suit. In the finding referred to the trial court did not find that appellants had actual knowledge or had ever heard of the two deeds referred to in the assignment; and we are of opinion that the circumstances mentioned by the trial court, in connection with some others that were shown by the statement of facts, warranted the conclusion that appellants had notice that the Arledges were asserting an adverse claim to the entire 400 acres of land before, at the time of, and ever since the statute of limitation was amended in 1896, so as to make it apply to married women.

[7] As to the contention that the testimony shows that Mrs. Carr had always claimed an undivided half interest in the land, the proof fails to show that she ever made any such claim to any person except her husband; and it further fails to show that either she or her husband ever asserted any claim to any portion of the land to either of the Arledges until the time stated in the finding complained of. But if she had asserted such claim, such assertion, unless it had taken the form of a suit against the Arledges, would not prevent the statute of limitation from running.

As bearing upon the question of ouster, and the trial court's finding in its conclusion of law that appellants had notice of the adverse claim asserted by the Arledges, we refer to certain facts not stated in the trial judge's findings of fact: The deed from M. D. Arledge and wife conveying 100 acres of the 400-acre tract to the McGinnises was filed for record in Williamson county December 29, 1879, and the deed executed by M. D. Arledge and wife, and conveying to W. A. Arledge 50 acres out of the northeast corner of the 400-acre tract was filed for record in Williamson county February 1, 1878; and the deed from the same grantors, executed on the same day to Mary Ann Brymer, conveying another 50 acres of said tract, was filed for record in Williamson county February 24, 1901. It was also shown that on November 25, 1879, M. D. Arledge and wife and A. P. Brymer and his wife, Mary Ann Brymer, executed a deed to Allen Wells, which was filed for record in Williamson county May 10, 1880, and which purported to convey the last-mentioned tract of land. On October 16, 1884, Allen Wells and his wife executed a deed, which was filed for record in Williamson county December 30, 1884, conveying the same tract of land to John A. Ryals. On July 10, 1886, Womack & Sturgis obtained a judgment in the district court of Williamson county against J. A. Ryals, foreclosing a lien upon that tract of land. November 4, 1886, the sheriff of Williamson county executed a deed to Womack & Sturgis, conveying the same tract of land, which deed was not recorded. January 9, 1887, J. W. Womack and John P. Sturgis executed a deed, which was filed for record in Williamson county February 8, 1887, con-

veying the same tract of land to G. W. Murray. Thus it appears that all of the deeds and other instruments above referred to were recorded in Williamson county prior to 1896, except the deed from M. D. Arledge and wife to Mary Ann Brymer, which was recorded in February, 1901; but a deed from the Arledges and Mrs. Brymer and her husband, conveying the same tract of land to Allen Wells, was filed for record in Williamson county May 10, 1880, which was long prior to 1896.

So it appears that it was disclosed by the records of Williamson county that prior to 1896 M. D. Arledge and his wife had executed deeds purporting to convey by metes and bounds at least one-half of the 400-acre tract, which was formerly owned by Mrs. Arledge and Mrs. Carr as cotenants; but, notwithstanding the fact that they had done so, the Arledges thereafter and for more than 10 years after 1896 continued in possession of the remainder of the 200 acres, claiming the same as their own and exercising full dominion over it for more than 10 years before the institution of this suit.

Counsel for appellant seems to contend that, inasmuch as the Arledges sold off fully as much of the 400-acre tract as they would have been entitled to in a partition between them and appellants, it ought to be held that their possession thereafter of the residue was in trust for appellants; but we fail to see the force of that argument. The purchasers from the Arledges held under deeds which purported to convey specific tracts by metes and bounds; and therefore their possession and claim was adverse to appellants, to the Arledges, and to every one else. Hence it seems to us that it would be more reasonable to conclude that when the Arledges divested themselves of title to half of the 400-acre tract, and assisted other persons in taking adverse possession of the half so conveyed, and thereafter remained in possession of all the balance of the land, such possession was intended to be adverse to appellants. In other words, after the Arledges sold off as much of the land as they were entitled to, while they may have retained the legal title to a half interest in the remainder, in equity they had no right thereto, and therefore were not in fact cotenants.

[8] Appellants were charged with knowledge of what the records of the county disclosed; and, such being the case, it seems to us that having notice of the fact that the Arledges had sold and conveyed to others as much of the land as they had any right to, then when thereafter they remained in possession of the balance of the tract, which in its entirety rightfully belonged to Mrs. Carr, the latter was charged with notice that such possession of the Arledges was adverse to any right of hers. Furthermore, for more

than 10 years before this litigation commenced, the land records of Williamson county disclosed the fact that the Arledges were asserting an adverse claim to the entire 400 acres, because the deed from M. D. Arledge and his wife to the McGinnises, conveying 100 acres off of the south end of the 400-acre tract, described that tract as the M. D. Arledge 400-acre survey, and contains the following statement and recital: "The said 400-acre tract was the tract that my wife, Elizabeth Arledge, fell heir to from her father Matthias Prewitt's estate." Thus it appears that the exclusive claim of the Arledges had become notorious, not only by reason of the facts referred to in the findings of the trial court, but by reason of the fact that their exclusive claim was embodied in a recorded deed, made by the Arledges, conveying a portion of the 400-acre tract, in which deed it was asserted, in substance, that Mrs. Arledge had title to the entire 400 acres.

After a thorough re-examination of the case, we are satisfied that our former disposition of it was correct; and therefore the motion for rehearing is overruled.

Motion overruled.