**TERRY et al. v. TERRY et al. (No. 1172.)**

(Court of Civil Appeals of Texas. El Paso.
· Feb. 10, 1921. Rehearing Denied
March 10, 1921.)

1. **Tenancy in common** ⬌15(5)—**One tenant cannot claim by adverse possession unless he has repudiated title of cotenant.**

Possession of a cotenant will be presumed to be in right of the common title, and he will not be permitted to claim the protection of the statute of limitation unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it.

2. **Tenancy in common** ⬌15(2)—**Other tenants must have actual knowledge of assertion by co-tenant of hostile claim or presumptive notice thereof.**

In partition between cotenants wherein one claims adversely, it must be shown to claim the protection of statute of limitations that the cotenant against whom the adverse claim is asserted had actual knowledge thereof or that possession and assertion of a hostile claim was of such notorious character that such cotenant would be presumed to have notice thereof.

3. **Tenancy in common** ⬌15(7, 8)—**Registration of deed under which claimant holds held constructive notice.**

In partition where a cotenant in possession claimed by adverse possession, the registration of a deed under which he held was constructive notice to his cotenants of the existence of the deed.

4. **Tenancy in common** ⬌15(10)—**Evidence held to sustain finding of adverse possession by cotenant.**

In partition where a cotenant claimed the land by adverse possession, evidence *held* to warrant a finding that the possession and assertion of adverse claim under a recorded deed was of such unequivocal and notorious character and so long continued that it could be presumed that plaintiffs had notice thereof, and their rights were barred by limitation.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Action by S. F. Terry and others against W. E. Terry and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Sanford & Harris, of Waco, for appellants.

R. L. Thompson and Pittman & Taylor, all of Stephenville, for appellees.

## Statement of Case.

HIGGINS, J. Clayborn Terry died between 1891 and 1893. At the time of his death he owned a tract of land in Erath county consisting of 160 acres. Upon his death this land passed by inheritance in nine equal parts to his heirs, consisting of certain children and their descendants. One of his children was Joseph Terry, who died March 17, 1919. Another child was J. R. Terry, who died in 1877, leaving a surviving wife, M. M. Terry, and several children.

By general warranty deed dated July 21, 1893, the other children of Clayborn Terry executed a deed to said Joseph Terry purporting to convey "an undivided eight-ninths ($^8/_9$) interest in and to" said land, describing same by metes and bounds and appropriate reference to the patent issued by the state. M. M. Terry, the surviving wife of J. R. Terry, also joined in this conveyance. The deed recites a cash consideration of $685, of which $75 was paid to M. M. Terry. This deed was duly recorded in Erath county on December 8, 1897. On July 10, 1919, the children of J. R. Terry, to wit, S. F. Terry, J. M. Terry, E. R. Terry, L. L. Terry, J. T. Terry, and Mrs. M. L. Morrow, joined by her husband, brought this suit in the district court of Erath county against the heirs of Joseph Terry, alleging that the plaintiffs owned an undivided one-ninth interest in said land and the defendants owned an eight-ninths interest therein, and praying a partition. Defendants answered by general denial and pleaded the three, five, and, ten years' statutes of limitation. The interest in the land asserted by the plaintiffs was that which was inherited by them from Clayborn Terry through their deceased father, J. R. Terry.

Upon trial before the court judgment was rendered against the plaintiff and fee-simple title vested in the defendants. Findings of fact and conclusions of law were not filed by the trial court. The plaintiffs in the case appeal from the judgment rendered.

## Opinion.

Upon the facts stated it is shown that upon the death of Clayborn Terry an undivided one-ninth interest passed to Joseph Terry, the father of appellees. Another such interest passed to the children of J. R. Terry, appellants here. The remaining seven-ninths interest passed to the other children of the decedent, who executed the deed of July 21, 1893, which purported to convey to Joseph Terry an undivided eight-ninths interest in the land. Mrs. M. M. Terry, the surviving wife of J. R. Terry, and mother of appellants, joined in this deed as a grantor and received $75 of the consideration paid, but in fact she was a stranger to the title and had no interest therein, for upon the death of Clayborn Terry the interest of J. R. Terry passed direct to his children. It thus appears that appellants became cotenants with Joseph Terry and were entitled to the relief which they sought unless their title is defeated by limitation.

Upon trial, which was had in January, 1920, S. F. Terry, one of the plaintiffs, testified in their behalf. According to his testimony he was then 53 years old and had lived in Hill and McLennan counties in the state of Texas since 1893; L. L. Terry was 58

---

years old; J. M. Terry, 51 years; J. T. Terry, 43 years; Mrs. Morrow, 46 years; and E. R. Terry about 5 years younger than J. M. Terry. His mother, Mrs. M. M. Terry, died in Hill county, Tex., on November 24, 1919. Prior to her death, Mrs. M. M. Terry lived with her son, one of the plaintiffs herein, J. T. Terry, and died at his home. Since 1893 the mother and the children have visited with each other. The witness and E. R. Terry, in 1889, while their grandfather was still alive, visited in Erath county and were upon the land in controversy.

J. C. Terry, a son of Clayborn Terry, testified for the defendants that he lived in the vicinity of Desdemona from 1885 until 1891 and had made two visits back since leaving; that on his first visit back, which he thought was in 1893, his brother Joseph Terry was living on the land with his wife and family and had possession of the whole premises; that there was then about 75 or 80 acres in cultivation, a two-room log house, outhouses, barns, and well. His next visit was in 1900, and at that time his brother was living on the place, and so far as he knew had entire possession thereof. At that time his brother was cultivating the place and making a crop; he had the place under fence; part of it was in cultivation; all that was in cultivation was under fence. As to the pasture being fenced, he did not remember.

W. E. Terry, a son of Joseph Terry, and one of the defendants herein, testified to the following effect: That his father bought the place in 1893 and moved onto the place at that time. The witness was then eight years old. He lived on the place with his father from 1893 continuously to 1909, when the witness left, and his father was cultivating and farming the land during that time. There were about 50 or 60 acres in cultivation upon the place in 1893, also two log houses and a log pen for a barn. The cultivated land was then fenced. During 1893 his father put into cultivation 35 or 40 more acres and after that time fenced the rest of the place, built a barn, and added two rooms to the house; set out an orchard and cross-fenced the place, and built ditches thereon. The father resided on the land from 1893 until he died in 1919.

Walter Terry, a son of Joseph Terry, and one of the defendants, in substance testified as follows: That he moved onto the land in 1893 with his father, being then about 11 years old, and lived continuously on the place from the time he moved there until the latter part of 1901. During that time his father used the place as a home and cultivated same; built houses and fences and put more land into cultivation. He never heard of any adverse claim until this suit was filed. From 1893 until his death his father worked and cultivated the land and collected the rents and revenues; his father put the entire tract under fence and built two additional rooms to the house; he built a three-room house for a rent house; built new barns; put out an orchard; built three or four surface tanks and cross-fenced the place. He never heard of any one objecting or raising any question about his father using, cultivating, and improving the place. His father cultivated the place continuously and lived thereon from 1893 until his death in 1919.

A number of other disinterested witnesses testified to the fact that Joseph Terry had lived continuously upon the land from about 1893 until his death, during which time he was in actual and exclusive possession thereof, cultivating, using, and enjoying the same.

Pat L. Pittman, an attorney of Stephenville, testified that as an attorney he visited Mrs. M. M. Terry for the purpose of securing a statement from her regarding the rights of the plaintiffs in the case. It appears that this visit took place in July, 1919. He visited her at the residence of Jess Terry (one of the plaintiffs); that upon this occasion he asked Jess Terry if he had known that Joe Terry had claimed this land as his own ever since he got that deed, and he said that he had.

It was admitted that Joseph Terry had paid the taxes on the land since 1893. It appears that this land was not of very great value until the development of oil in the Desdemona field. This land was in that vicinity and immediately became quite valuable. Some time prior to December, 1918, it appears that Joseph Terry filed a suit in the district court of Erath county, numbered 4523, and entitled, "Joseph Terry et al. v. Unknown Heirs of M. M. Terry." The plaintiffs introduced a portion of the testimony given by Joseph Terry upon the hearing of cause No. 4523, which testimony had been reduced to writing and filed in the case as provided by law. That portion of the testimony of Joseph Terry so offered in evidence reads as follows:

"My name is Joseph Terry. I reside in Erath county, Tex., and am ―― years old.

"I am one of the plaintiffs in this case, and own one-half undivided interest in the land described in the deed from M. M. Terry and others shown to me. (Here the deed describing 320 acres of land hereinafter set out was shown to the witness.)

"My wife and myself owned this land. It was community property, being bought with funds made while we were married and bought during the time we were living together. My wife is now dead. She died ――, or about that date.

"My wife and myself had four children. Their names are: Wylie E. Terry, a son; Lillian E. Buchan, a daughter; Walter D. Terry, a son; and ―― Terry, who is now dead and who left surviving him a widow, Bobbie I. Terry.

"Bobbie I. Terry and my deceased son had five children. Their names are as follows:

Norma Terry, about 17 years old; Leone Terry, about 13 years old; Schuler Terry, about 9 years old; Eunice Terry, about 6 years old; and Lee Edwin Terry, about 3 years old.

"As stated to you awhile ago, I own one half of this 320 acres and the children own the other half, together with the widow of my deceased son and Bobbie I. Terry and his wife.

"My wife and myself bought this land in 1893, from my brothers and sisters; they having an interest in it as heirs of my father. The names of my brothers and sisters are as follows: C. M. Terry; Mrs. M. E. Lowe; J. C. Terry; T. E. Harris; M. J. Spradling; E. A. Crenshaw; C. R. Terry; and J. R. Terry; the latter being the husband of M. M. Terry. J. R. Terry is dead and died about February, 1877.

"J. R. Terry and M. M. Terry had two children, but I do not know them or where they are. Nothing has been heard from them since about their father's death. I think the oldest child was born in 1861, and the other is about 5 years younger than he.

"They have never made any claim against this land. Their mother executed the deed shown to me.

"We paid $658.00 for the land and, besides this, other valuable considerations were paid. This was an adequate price and a good price for the land at the time. In other words, it was the market price at that time. M. M. Terry received the same price as the others, they conveying an undivided interest in the land and received the proportionate consideration therefor.

"My wife and myself up to her death occupied and owned this land and cultivated it, claiming the same as our own and using, enjoying the same and we were never molested in our title thereto. No one ever asserted any interest therein and we paid the taxes thereon all along. The same is true with the children and myself since my wife's death. Furthermore, we had the land under fence all the time. This was longer than ten years—in fact, ever since it was bought by us.

"This suit was brought because M. M. Terry's children did not join in the deed, and I was advised that this interest could only be cured by suit or deed from them, and not being able to find them I had this suit filed and claim the land both under my deed and by limitation."

Appellants question the sufficiency of the evidence to support the judgment. Their contention in effect is that they were cotenants of Joseph Terry; that they were not shown to have had actual knowledge that Joseph Terry had repudiated their title and was holding adversely thereto; and that the evidence is insufficient to affect them with constructive notice of such repudiation and adverse holding.

[1] It is well settled that the possession of a cotenant will be presumed to be in right of the common title, and he will not be permitted to claim the protection of the statute of limitation unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it. Alexander v. Kennedy, 19 Tex. 496, 70 Am. Dec. 358.

[2] Furthermore it must be shown that the cotenant against whom the adverse claim is asserted had actual knowledge thereof, or that the possession and assertion of a hostile claim was of such notorious character that such cotenant will be presumed to have notice of the same. Phillipson v. Flynn, 83 Tex. 582, 19 S. W. 136; House v. Williams, 16 Tex. Civ. App. 122, 40 S. W. 414; Stiles v. Hawkins (Com. App.) 207 S. W. 89.

[3] The registration of the deed of July 21, 1893, was constructive notice to the cotenants, the plaintiffs in this case, of its existence. Puckett v. McDaniel, 8 Tex. Civ. App. 630, 28 S. W. 360; Morgan v. White, 50 Tex. Civ. App. 318, 110 S. W. 491; Carr v. Alexander, 149 S. W. 218.

J. R. Terry had a one-ninth interest in the land acquired by inheritance, and the deed mentioned, in fact conveyed the seven-ninths interest owned by seven of the other heirs of Clayborn Terry, but it purported to convey an eight-ninths interest and was signed by a grantor who in fact had no title, to wit, M. M. Terry, the surviving wife of J. R. Terry and mother of the plaintiffs. This deed described the tract by metes and bounds. When it was recorded in 1897, all of the plaintiffs were of age. It is shown that M. M. Terry lived with one of the plaintiffs (J. T. Terry) until her death in 1919, and that the children had visited with each other. It is apparent that Joseph Terry claimed the J. R. Terry interest under the conveyance of Mrs. M. M. Terry. It is further and abundantly shown that for 26 years after the execution of this deed and for 22 years after its record he remained in actual, exclusive, and continuous possession of the land. During all of this time he openly and notoriously exercised the right of full ownership.

That he was claiming and holding adverse to the plaintiffs is apparent, and the only question is whether they were affected with notice thereof.

[4] We are of the opinion that under the evidence the trial court was warranted in finding that the possession of Joseph Terry and the assertion by him of a claim hostile to plaintiffs, under the recorded deed, was of such unequivocal and notorious character and so long continued that it may be presumed the plaintiffs had notice thereof and their right barred by limitation. In support of this view, see Church v. Waggoner, 78 Tex. 200, 14 S. W. 581; Cryer v. Andrews, 11 Tex. 170; Puckett v. McDaniel, 8 Tex. Civ. App. 630, 28 S. W. 360; Robles v. Robles, 154 S. W. 230; Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 508; Morgan v. White, 50 Tex. Civ. App. 318, 110 S. W. 491; Carr v. Alexander, 149 S. W. 218.

Affirmed.