JERRY ROBINSON v. JOHN M. JONES.

No. 55.

1. **Construction of Deed—Word "Locations."**—The language of the deed was: "Do bargain, sell, and convey   *   *   *   all legal and equitable rights, privileges, and titles to any and all locations made by me on Galveston Island." A charge, "If you believe from the evidence that Hall, by himself or with others or another, had made locations on Galveston Island not embracing the land in controversy, which land in controversy was then patented, you must determine from the evidence whether the word 'locations' embraced the patented land in controversy, or only other locations," was erroneous.

2. **Construction of Deed for the Court and not for the Jury.**—When the word "locations" in a deed was directly applicable to files shown to have been made, but not on the land in controversy (which had been patented), and no evidence was offered to show that the property in controversy was intended to be conveyed by that word, or that the grantees ever claimed title under that deed, the jury might properly have been told that the patented lands did not pass by it.

**3. Practice—Dismissal of Suit as to a Claimant of Land—Effect of.**—Holder of purchase money notes sued the makers and Hall, who claimed title to the land. He dismissed as to Hall, and took foreclosure judgment against the makers of the notes, sold the land, and bought it in himself. The title to the land, so far as it concerned Hall, stood just as it was before the foreclosure, and those holding title under the foreclosure sale were tenants in common with Hall.

**4. Subdivision into Lots—Effect of, on Possession.**—The fact that the land had been cut up into ten-acre lots would not confine the constructive possession to the particular lot occupied, because the land was conveyed as a whole; unless the owner had leased a part of the land, including his actual possession, in which event he would have put himself out of the constructive possession of the balance.

APPEAL from Galveston. Tried below before Hon. W. H. STEWART.

*Willie & Ballinger*, for appellant.—1. It is the duty of the judge to construe written instruments, and their construction should never be left to the jury. The term "locations" used in the deed was not ambiguous, but had a well defined meaning, namely, land merely set off from the public lands, and surveyed, and in some cases patented; and it did not apply to lands held by Hall, not by virtue of location, but by purchase from others. The uncontradicted evidence showed that at the time Hall made the deed to Andrews, Kent, and Jones, he claimed the lands in controversy by deed from Jones and Hubbell, and not by location, the title by location having long previously passed out of him. San Antonio v. Lewis, 9 Texas, 69; Swift v. Herrera, 9 Texas, 263; Wright v. Thompson, 14 Texas, 558; Beale v. Ryan, 40 Texas, 409; Cook v. Dennis, 61 Texas, 249; Shepherd v. White, 11 Texas, 346.

2. The evidence does not show that Jones held any possession of said land adverse to the claim of Hall or of those claiming under him. Rev. Stats., arts. 3191–3199; Moody v. Butler, 63 Texas, 210; Bracken v. Jones, 63 Texas, 184; Read v. Allen, 63 Texas, 154; Cunningham v. Frandtzen. 26 Texas, 34; Carley v. Parton, 75 Texas, 99; Snow v. Starr, 75 Texas, 419; Porter v. Miller, 76 Texas, 596.

*Robert G. Street*, for appellee.—The title to the land rests on a location made by Hall and Jones on Galveston Island; and that fact being admitted, by proper legal construction the deed must be held to embrace any interest Hall may have had in it, whether resting immediately on such locations or upon a reconveyance by his vendees; and if it was competent to make the inquiry, the burden was upon the plaintiff himself to show that it was not included.

GARRETT, CHIEF JUSTICE.—This suit was brought by Jerry Robinson against John M. Jones, for the recovery of an undivided one-third interest in a number of lots of land on Galveston Island.

The defense is outstanding title and limitation.    Plaintiff showed title as follows:

1.  Patent by the State of Texas to Edward Hall and Levi Jones.

2.  Power of attorney from Edward Hall to William Bryan.

3.  Deed from Edward Hall, by William Bryan, attorney in fact, to John M. Jones and Henry Hubbell, dated October 9, 1847.

4.  Deed from John M. Jones and Henry Hubbell to Edward Hall for an undivided one-third interest in the land, dated October 13, 1847.

5.  Will of Edward Hall, devising the land to his wife, Eliza Ann.

6.  Deed from Eliza Ann Hall, widow of Edward Hall, to John McDougal, dated October 1, 1885.

7.  Deed from John McDougal to the plaintiff, Jerry Robinson, dated September 18, 1890.

The defendant put in evidence a deed dated October 9, 1867, from Edward Hall to Henry B. Andrews, John M. Jones, and the estate of Lorin Kent, deceased, wherein he conveyed, "in addition to the property conveyed to them by deed bearing date November 20, 1866, all legal and equitable rights and privileges and titles to any and all locations made by me on Galveston Island, Texas, either individually or in connection with others."

He further offered in evidence.

1.  The deed of Edward Hall, by Bryan, attorney in fact, to John M. Jones and Henry Hubbell, above recited, which shows that it was recorded in the record of deeds for Galveston County, October 19, 1847, and recited a consideration of $800 and other considerations.

2.  Proceedings in cause number 441, M. B. Menard v. John M. Jones, Henry Hubbell, and Edward Hall, to foreclose mortgage for the purchase money notes given by Jones and Hubbell for the land.    No service was had on Hall, and the suit was dismissed as to him.    There was judgment and foreclosure as to Jones and Hubbell.

3.  Execution and return of sale in said cause, showing sale of property to the plaintiff, M. B. Menard, on the first Tuesday in March, 1850.

4.  Deed of M. B. Menard to John M. Jones and Henry Hubbell, dated June 13, 1850, recorded October 28, 1851, releasing and quitclaiming the land to Jones and Hubbell.

5.  Henry Hubbell died in 1853, and his estate was regularly administered in Galveston County.    A half-interest in the property described in the deed from Hall, by Bryan as attorney in fact, to Jones and Hubbell was inventoried among the assets of the estate, and was duly sold by the administrator and purchased by the defendant, John M. Jones, who received a deed therefor, which was recorded in Galveston County in 1855.

The evidence also showed, that the land patented to Edward Hall and Levi Jones had been partitioned between them, and that other persons, viz., John C. Watrous, R. C. Franklin, and William Bryan, were inter-

ested with Hall in his half-interest in the land, although the legal title was in him. There was a partition of the interest set apart to Hall between him and those interested with him, except as to the several bayous and portions of the land covered with water included within the bounds of the patent to Levi Jones and Edward Hall, and the several sections assigned to Edward Hall which were declared by the decree of partition to be the common property of Hall, Bryan, Watrous, and Franklin. From certain papers attached to the decree of partition, read in evidence, it appeared that Hall, for himself and as attorney for Bryan, had made application to the surveyor of Galveston County for a survey of all the public domain of Galveston Island; and also for the location of certain land scrip on the shoals and reefs in front of and adjoining the city of Galveston.

In submitting the deed from Edward Hall to H. B. Andrews, John M. Jones, and the estate of Lorin Kent, to the jury, the court charged them as follows: "As to the said instrument of writing of date October 9, 1867, and filed for record August, 1872, it is ambiguous as to the word ' locations;' the language of the said instrument is, that he ' do bargain, sell, and convey to the parties above named, in addition to the property conveyed to them by deed bearing date November 20, 1866, all legal and equitable rights and privileges and titles to any and all locations made by me on Galveston Island, Texas, either individually or in connection with others.' The ambiguity arises from the word ' locations,' used in said instrument. If you believe from the evidence that Hall, by himself, or with others or another, had made locations on Galveston Island not embracing the land in controversy, which land in controversy was then patented, you must determine from the evidence whether the word ' locations ' embraced the patented land in controversy, or only embraced the locations not embraced in the land in controversy; for if you believe from the evidence that the word ' locations ' used in said instrument only embraced the said other locations, then the said instrument would not defeat the regular chain of title in the plaintiff Robinson for one undivided third of the property described in the petition."

The plaintiff has assigned error upon this instruction, because it was the duty of the court to construe the deed for the jury, since there was nothing ambiguous or doubtful as to the terms of the deed with respect to what was undertaken to be conveyed, and no evidence was offered by the defendant to show that the property in controversy was intended to be conveyed by the deed referred to; and there is no evidence to show that either Jones, Kent's estate, or Andrews ever claimed title to the land under said deed, but that on the contrary the evidence showed that it was claimed by the defendant Jones under title from Edward Hall, deraigned through regular conveyances from October 9, 1847, down to the date of the trial. The admission of the deed in evidence was also

objected to by plaintiff's counsel, because on its face' it did not pass title to the property in controversy from Edward Hall to Jones, Kent, and Andrews, and the deed was not offered for any other purpose; that it had no power or force to pass title to the patented lands that had passed from its locative relation into patent, and out of patent into title, by deed from Edward Hall to others and back to Edward Hall, of the one-third interest in controversy, and not held by right of location, but by due conveyance from private parties, when he executed the deed.

Has the word "locations" a fixed legal meaning, which must control the court in the construction of the deed in question? The primary signification of the word "location," as applied to land, is the land designated by a person when he files a valid land certificate with the proper surveyor and makes an application for the survey of land subject to location by virtue of the certificate. Such person acquires a vested right in the land, and to have the same appropriated to his certificate, surveyed, and finally patented upon proper return of the field notes and otherwise complying with the law. But when the term is used by a person in speaking of locations made by himself, it would ordinarily apply to the land surveyed for him on his application, without any restricted meaning as to whether it was land filed upon, surveyed, or patented. This is the meaning claimed for the term by the appellant. Yet it might be used in a still broader sense by a grantor in conveying lands to designate the same as all "locations" made by him, although a part had been conveyed away to others and reconveyed to him, as contradistinguished from lands not located by him, but conveyed to him by others.

Hence we conclude, that the word "locations," as used in the deed from Edward Hall to the defendant John M. Jones and others, has no such well defined meaning as would enable the court to construe the instrument without the aid of evidence, and that it was proper to admit evidence to show to what subject matter it applied; and if it should appear from the evidence that the term could be clearly applied to certain lands on Galveston Island, then it should be so applied; but if the application is still left in doubt and can not be made, nothing should pass by the conveyance.

But, as we have seen, the word "locations" is directly applicable to the files shown to have been made by Edward Hall for himself and Bryan on all the public domain on Galveston Island, and the shoals and reefs in front of the city, as well as to the patented location on the bayous and land covered by water which had not been partitioned; and such being the case, and there being no evidence tending to show that the land reconveyed to Hall by Jones and Hubbell was intended to be conveyed, it was error to charge the jury, that if they believed from the evidence that Hall by himself, or in connection with another or others, had made loca-

tions on Galveston Island not embracing the land in controversy, which had been patented, then they should determine from the evidence whether the word "locations" embraced the patented land in controversy, or only embraced the locations other than the land in controversy. It would have been proper, in view of the evidence before the jury, to have given the instruction requested by plaintiff, that the title to the property in controversy did not pass from Hall by the deed in question.

The deed from Menard to Jones and Hubbell, after the execution sale of the property to him, left the title to the land, as far as it concerned Hall, just as it stood before the foreclosure, as he was not a party to the suit. And as Jones and Hubbell had conveyed the land to Hall with a warranty as against the claims of themselves, the purchase by them from Menard was perfectly consistent with Hall's title, and does not show any claim by them to the land adverse to the title of Hall to an undivided one-third interest therein. So also, possession of the land and payment of taxes by Jones was not inconsistent with the title of his tenant in common. There is no evidence to show the assertion of an adverse title or possession until the purchase by Jones from the Hubbell estate, and the placing of the administrator's deed to Jones for the land upon record, which was done in 1855.

The evidence does not show that even five years possession such as Jones could prescribe under was had by him prior to the war. The deeds from Menard to Hubbell and Jones and from Hubbell to Jones were of themselves sufficient to support the five years statute of limitations, on proof of an adverse possession under them and payment of taxes. Even if it should be held that the possession under the Menard deed was adverse, yet it is not shown that Jones' tenant, Homberg, had possession for five years from the date of its record. In this connection, it may be said, that the fact that the land had been cut up into 10-acre lots would not confine the constructive possession to the particular lot occupied, because the land was conveyed as a whole, and there were no separate claimants of distinct lots. If it should be shown that there was sufficient possession of any part of the land in controversy to put the statute of limitations into effect, such possession would extend by construction to all of the land included in the deeds; unless, however, the defendant Jones should have leased a part of the land including the actual possession, in which event he would have put himself out of the constructive possession of the balance.

Goodrich Jones testified to the payment of taxes, and that in 1881 he had a part of the land fenced in, viz., lots 74, 77, and 88, and that a German was in possession thereof, renting from him; that this tenant stayed there for five years. As to whether or not this was a possession of all the land would depend upon the extent of the lease—whether it

was only for the lots named or for the entire tract.    There was other evi-dence as to possession, but not of a satisfactory nature.

The judgment of the court below can not be sustained on the proof in behalf of the plea of limitations, and for the error indicated it will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 23, 1893.