ROSBOROUGH v. COOK.

(Court of Civil Appeals of Texas. Texarkana.
June 6, 1912. Rehearing Denied
June 20, 1912.)

1. LIS PENDENS (§ 24*)—PERSONS CONCLUD-
ED—PURCHASER FROM COTENANTS.

A purchaser from part of the tenants in
common during the pendency of their suit to
partition the property is bound by the judg-
ment rendered in that case, though not actually
a party.

[Ed. Note.—For other cases, see Lis Pendens,
Cent. Dig. §§ 38–40, 42–46; Dec. Dig. § 24.*]

2. TENANCY IN COMMON (§ 45*)—SALES AND
CONVEYANCES—SPECIFIC AMOUNT.

Tenants in common with others have no
right to convey to a stranger specific por-
tions of the common estate.

[Ed. Note.—For other cases, see Tenancy in
Common, Cent. Dig. §§ 135–137; Dec. Dig. §
45.*]

3. PARTITION (§ 49*)—PROCEEDINGS—PARTIES
—INTERVENTION.

A purchaser of a specific portion of land
pending a partition suit between his vendors
and others as tenants in common has the right
to intervene in the partition suit, and ask to
have the property conveyed to him set apart
to one or both of his grantors in the general
distribution.

[Ed. Note.—For other cases, see Partition,
Cent. Dig. §§ 130–135; Dec. Dig. § 49.*]

4. ADVERSE POSSESSION (§ 81*)—SUFFICIENCY
OF CLAIMS—POSSESSION UNDER DEED FROM
COTENANTS PENDING PARTITION.

A purchaser, pending a partition suit be-
tween his vendor and others as cotenants, did
not intervene in the suit to have the property
set apart to his vendors, and after judgment
against his vendor continued in possession claim-
ing under the deed. Held, that the deed was a
sufficient basis for a claim of adverse posses-
sion.

[Ed. Note.—For other cases, see Adverse
Possession, Cent. Dig. §§ 472–485; Dec. Dig. §
81.*]

5. ADVERSE POSSESSION (§ 115*) — QUESTION
FOR JURY—INTERRUPTION OF POSSESSION.

On evidence in a suit to recover a tract
of land where defendants set up title by limi-
tation the question whether a wire joined by
plaintiff to defendant's fence on both sides
without carrying it across her land, was suffi-
cient to constitute a re-entry, and actual pos-
session was for the jury.

[Ed. Note.—For other cases, see Adverse
Possession, Cent. Dig. §§ 314, 691–701; Dec.
Dig. § 115.*]

Appeal from District Court, Harrison
County; H. T. Lyttleton, Judge.

Action by W. J. Rosborough against El-
len Cook. Judgment for defendant, and
plaintiff appeals. Affirmed.

F. H. Prendergast, of Marshall, for appel-
lant. A. G. Carter and Jas. Turner, both of
Marshall, for appellee.

HODGES, J. This suit was instituted in
the court below by the appellant against the
appellee to recover a tract of about 20 acres
of land situated in Harrison county, and to
cancel a deed as a cloud upon his title. Be-
sides a plea of not guilty, the defendant be-
low pleaded the statute of limitation of five
years and other special defenses not material

to be here considered. From the verdict and
judgment rendered in favor of the appellee,
Ellen Cook, this appeal is prosecuted.

The material facts are practically undis-
puted. As evidence of his title appellant re-
lies upon a deed from Ruby Faust and her
husband, dated January 17, 1906, conveying
to him the land in controversy. For the pur-
pose of showing title in Mrs. Faust, appel-
lant introduced in evidence the papers and
court records of two former suits filed in
the district court of Harrison county. The
first was numbered 10,279, and was brought
by J. E. Blair, R. K. Turner, Ruby Faust
joined by her husband, Ed Faust, and B W.
Long and his children, against A. B. Was-
kom, to recover 362 acres of land not involv-
ed in this suit. On December 11, 1900, the
plaintiffs in that suit amended their petition,
and asked for a judgment against the de-
fendants for the recovery of 93 acres of the
Stadler and Carroll survey, which includes
no part of the land here involved, and for
a partition among themselves of a portion of
the Brooks survey, which does include the
land in controversy. The second suit was
numbered 10,988, and was filed in November,
1903, by the same plaintiffs against Waskom
and others. This suit appears to have been
one to rescind a contract by which there had
formerly been an exchange of other lands.
In 1905 those two suits were consolidated,
and on the 18th day of August of the same
year a final judgment was rendered making
a partition of the land between the plain-
tiffs, and setting aside that portion of the
land involved in this suit to Ruby Faust.
It was also shown that on February 20,
1904, during the pendency of the first suit
above mentioned, Turner and Blair, parties
plaintiff in those suits, conveyed 64 acres of
the Brooks survey, which includes the land
here involved, to Ellen Cook. Their deed to
Ellen described the land by metes and
bounds, and purported to convey the entire
title with a general warranty. Previous to
the date of this instrument, in December,
1901, Turner and Blair had made a con-
tract with Tom Cook, the husband of El-
len, to sell him this same tract of land.
Soon thereafter, Cook and his wife settled
upon the land, and began to make improve-
ments. In the following year Tom died. It
was after this that Ellen Cook took the con-
veyance above referred to from Turner and
Blair to herself. It is admitted that she has
continuously since the date of her deed been
in the actual possession of the land therein
conveyed, claiming it under her deed which
was duly recorded, and has paid all the tax-
es assessed against the property. In short,
it is conceded that she had at the date of
the institution of this suit, the 7th day of
September, 1910, a perfect title by limitation
to the land claimed by her if she should be
permitted to prescribe under the deed from

Turner and Blair, and if her possession was not interrupted by the act of the appellant in attempting to enclose the premises with a wire fence.

[1] It is insisted by appellant that Ellen Cook, having purchased from two of the tenants in common during the pendency of the suit to partition the property, is bound by the judgment rendered in that case, though not actually a party; that the legal effect of that judgment was to annul her deed from Turner and Blair and destroy its validity as the basis of an adverse claim. It may be conceded that Ellen Cook, having purchased pendente lite, is as much bound by the judgment rendered as if she had been an actual party to the litigation; but the question is, Does that privity necessarily entail the consequences claimed by counsel for appellant in this instance?

[2] Turner and Blair, as tenants in common with Long and Faust, had no right to convey to a· stranger specific portions of the common estate. Such a conveyance, however, would not be absolutely void, but was subject to an adjustment which the court might in the exercise of his equitable powers make for the purpose of preserving the rights acquired by the purchaser.

[3] Ellen Cook had the right to intervene in the partition proceedings, and to ask to have the property which had been conveyed to her set apart to one or both of her grantors in the general distribution; and this should have been done if it would not have operated to the prejudice of the other co-owners. That rule, however, does not affect the proposition here involved.

[4] If Ellen Cook is required to rely upon a title transmitted by her deed from Turner and Blair, the two tenants in common, unquestionably her rights would be tested by the legal effect of the decree of partition upon that deed. Let us assume that the deed from Turner and Blair to Ellen Cook invested her with a legal interest in the land, and entitled her to ask for equitable relief in the allotment of the different shares. It was this interest and this right only which were destroyed by the decree of partition which allotted this land to Faust. Had the allotment been to Turner and Blair, she would now be holding a title transmitted by her deed. As it is, she had no title; and, after the judgment was rendered, remained in possession of the premises without any legal right, but as a mere claimant without title. Her deed was rendered worthless as a muniment of title, but it was not affected as a basis for an adverse claim, which she appears to have then asserted. Upon the rendition of the partition decree of August 18, 1905, she might have been turned out of possession by an appropriate writ or by an independent proceeding instituted in the form of an action of trespass to try title by Mrs. Faust, to whom the land had been awarded. Such a cause of action then arose, but no such proceeding was begun; and Ellen Cook continued to hold possession, claiming under her deed, and paying all the taxes down to the date of the institution of this suit. Her possession from the date of that decree at least was adverse, and limitation began to run in her favor from that time. The deed, while not sufficient as a muniment of title, was good as an evidence of an adverse claim. It is immaterial for this purpose whether it was sufficient to invest title or not, if it were not void upon its face.

[5] Appellant also contends that he re-entered and took actual possession of a part of this land in June, 1910, a few months before appellee's title was perfected by five years of adverse occupancy. The testimony bearing upon this issue is as follows: "I know the place where Ellen Cook lives. I went down there and stretched a wire around it on June 4th, 1910. In running the south line of my land I came to her fence and joined on to her fence on the east side, and went around and joined her fence on the west side. If I had run across her inclosure, it would have included in my claim about 3½ acres of her field. I did not run across her field because she had that in cultivation, and it would have interrupted her in the cultivation of her crop. I just tied on to the east side of her fence and followed the line on across, and on the west side of the new ground I fastened the wire right up next to her fence, and ran from there west to the corner and then turned back towards the lake, and went to the lake. I took Ellen Cook down there and showed her the corner and explained it to her. Ellen Cook stated to me that she thought it was her land, that she had bought it. The new ground that my wire struck looked like it had been in cultivation two or three years. I did not know how long Ellen Cook had been there. I did not ask her to give me permission to wire in the land. I just told Ellen Cook that my deed called for it, and that I was trying to run the line just as nearly as I could come to it, and wire my land in. Ellen Cook said she thought that the land I was wiring in belonged to her." It is impossible to say from this testimony how much, if any, of the land was within the wire referred to, or whether the fence was sufficient to constitute a re-entry and actual possession. Appellee's fence formed a part of the inclosure; and it may be said that the land was as much under her fence as his. It cannot be said as a matter of law that the stretching of this one strand of wire in the manner detailed was a re-entry and a resumption of the actual possession of any designated portion of the property. That issue was submitted to the jury in a charge against the form of which there is no objection.

We find no error in the record, and the judgment is therefore affirmed.