WALKER et al. v. KNOX.    (No. 105.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 9, 1916. Rehearing Denied Dec. 7, 1916.)

1. PROPERTY ⬳10 — SEISIN — CONSTRUCTIVE POSSESSION.

Land, not in actual possession of any one, is deemed to be in the constructive possession of the legal owner, by virtue of his title.

[Ed. Note.—For other cases, see Property, Dec. Dig. ⬳10.]

2. ADVERSE POSSESSION ⬳100(1)—EXTENT OF CLAIM.

One claiming title by adverse possession, but not holding under color of title, acquires no title to any land except that which is in actual possession, and, under the 10-year statute of limitations, providing its requisites have been met, to 160 acres.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 547; Dec. Dig. ⬳100(1).]

3. ADVERSE POSSESSION ⬳100(1)—EXTENT OF CLAIM.

Generally, where a person enters into the occupancy of premises under color of title thereto, his possession is not considered as confined to the portion in his actual occupancy, but his possession is deemed to embrace all the land covered by the instrument under which he claims, provided no other person is in the actual occupation of the part not actually occupied by him.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 547; Dec. Dig. ⬳100(1).]

4. ADVERSE POSSESSION ⬳100(1) — EXTENT OF CLAIM.

Actual possession of part of premises under color of title will not draw to it constructive possession of the balance, unless such color of title is also accompanied by claim of title co-

extensive with the boundaries of the conveyance.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 547; Dec. Dig. ☞100(1).]

5. EVIDENCE ☞273(2)—DECLARATIONS—POSSESSION—EXTENT OF CLAIM.

Constructive possession may always be restricted by the acts and declarations of the occupant, indicating that he does not make his claim coextensive with the boundaries of his color of title.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1111, 1112; Dec. Dig. ☞273(2).]

6. TENANCY IN COMMON ☞14—DISSEISIN—CONVEYANCE BY ONE COTENANT—ADVERSE POSSESSION—COLOR OF TITLE.

Where one tenant in common assumes to convey the entire estate and does convey it by metes and bounds, the deed will give color of title to the whole tract, and entry by the purchaser thereunder, claiming title to the whole, will operate as an actual ouster and disseisin of the cotenant.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 30–41; Dec. Dig. ☞14.]

7. ADVERSE POSSESSION ☞100(6) — EXTENT OF CLAIM—POSSESSION BY TENANT.

Within the rule that actual possession of part of a tract of land under color of title gives constructive possession to the extent of the boundaries designated in the conveyance, the possession of a part of a tract of land by a tenant of the holder of color of title, who has been put into possession under a lease which does not restrict his possession to any definite part of the tract, will give the lessor constructive possession coextensive with the boundaries of the conveyance, since the possession of the tenant inures to the benefit of the lessor.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 563–566, 568–571, 573; Dec. Dig. ☞100(6).]

8. ADVERSE POSSESSION ☞100(4)—EXTENT OF CLAIM BY TENANT.

Possession by a tenant of a part of a tract under an instrument describing it specifically by metes and bounds does not establish his landlord's constructive possession to the whole tract, but only to the tract described.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 557–559; Dec. Dig. ☞100(4).]

9. ADVERSE POSSESSION ☞71(2)—COLOR OF TITLE—DEFECTIVELY ACKNOWLEDGED DEED—"DULY REGISTERED DEED."

The five-year statute of limitations cannot be based on a defectively acknowledged married woman's deed; it not having the character of a duly registered deed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 417–421, 424–426, 428; Dec. Dig. ☞71(2).]

10. TENANCY IN COMMON ☞14—DISSEISIN—ADVERSE POSSESSION—NOTICE TO COTENANT—RECORDED DEED.

Recorded deed to defendant of an entire tract, and instruments in defendant's chain of title, in themselves undertaking in good faith to convey the entire tract of land to defendant's grantor, including the interest of plaintiffs, constituted notice to such plaintiffs, who were cotenants of defendant's grantor, that defendant was asserting adverse claim to plaintiff's interest.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 30–41; Dec. Dig. ☞14.]

11. ADVERSE POSSESSION ☞31—NOTICE OF ADVERSE CLAIM.

No real owner ought to be deprived of land under the statute of limitations unless he has actual notice of the adverse claim thereof, or constructive notice based upon the open, hostile, and notorious assertion of claim and possession by the adverse claimant.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 128–133; Dec. Dig. ☞31.]

12. TENANCY IN COMMON ☞15(2)—ADVERSE POSSESSION — NOTICE TO COTENANT — "WATCHING OVER."

Recorded deeds to a tract of land with possession by tenant of last grantee for more than 5 years under a verbal agreement, the landlord in the meantime claiming the land and paying the taxes thereon, the tenant testifying that he "watched over the entire tract," was sufficient notice to cotenants of the immediate grantor to establish title under the five-year statute of limitations, since "watching over" anything is to be construed as preserving, preventing spoilation, encroachments, or trespasses, and having the right of and exercising control or dominion over anything.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 43; Dec. Dig. ☞15(2).]

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Trespass to try title by Nora Walker and others against Hiram Knox. From judgment for defendant, plaintiffs appeal. Affirmed.

J. W. Minton, of Hemphill, and W. D. Gordon and H. G. Russell, both of Beaumont, for appellants. E. J. Mantooth, of Lufkin, and W. F. Goodrich, of Hemphill, for appellee.

CONLEY, C. J. This is a suit in trespass to try title, filed in the district court of Sabine county on September 9, 1914, by the appellants, as plaintiffs, and against the appellee, as defendant, seeking to recover an undivided 177 acres interest out of a 354-acre tract in the William Isaacs survey in said county. The defendant, Knox, filed his answer in the usual form, and·pleaded the 3, 5, and 10 years' statutes of limitation. The case was tried by the court without a jury, and judgment rendered against the appellants. Motion for new trial was filed in due season, and, same being overruled, an appeal was perfected to this court.

It appears from the record that on May 12, 1845, William Isaacs, the original grantee under the Mexican government, by warranty deed conveyed to William A. Donoghue 354½ acres of land out of said William Isaacs survey, describing the same by metes and bounds. Thereafter William Donoghue died, leaving surviving him his wife, Harriett A. Donoghue, and one son, Thomas J. Donoghue, the land in question being a part of the community estate of the said William A. Donoghue and his wife. The wife subsequently married R. J. Jennings. On March 15, 1871, Thomas J. Donoghue, the son, executed a warranty deed to R. J. Jennings, the stepfather, for the entire 354½ acres. On May 10, 1871, Harriett A. Jennings, being then the

wife of said R. J. Jennings, executed a deed to her husband, in which she undertook to convey all her right, title, and interest in and to said land. This deed was not joined in by her husband, nor is it properly acknowledged, and therefore it did not accomplish the purpose of conveying her title. This deed was recorded in the deed records of Sabine county on the 4th day of July, 1871. On the 10th of May, 1871, R. J. Jennings, joined by his wife, Harriett, undertook to convey the entire 354½ acres of land to John H. Derrough. This deed was recorded in the deed records of Sabine county on the 4th day of July, 1871. The wife's separate acknowledgment on this instrument is fatally defective. On the 19th of May, 1900, J. H. Derrough conveyed by warranty deed the same land to W. H. Knox, which deed was recorded in Sabine county on January 18, 1901. The appellee, Hiram Knox, a son of W. H. Knox, is now the owner of this title. It is to be seen that on account of these defects, the interest of Harriett A. Jennings did not pass under said conveyances, and that such conveyances only transmitted the legal title to an undivided one-half interest in and to the said 354½ acres. Thomas J. Donoghue, the son, died without issue in 1878. Harriett A. Jennings, by her second marriage, had two daughters, one of whom died without issue, and the other one, Cora, married Thomas W. Howth, and the appellants in this case are the children of said marriage. Both Harriett A. Jennings and her husband, R. J. Jennings, have long since departed this life.

The appellants in this case are entitled to recover, unless they are defeated, as was found by the court, under the plea of limitation based upon the 5-year statute.

The evidence is undisputed that in 1896 one W. H. Garlington cleared and fenced up a portion of this land, how much is uncertain, but less than 15 acres, and made a crop on it for that year. He was a squatter on the land. In February, 1905, William Knox, finding him still there, and making a claim to his improvements by reason of his possession, entered into a verbal agreement with him, to the effect that he, Garlington, was to stay on the land and hold the 354½ acres for him, Knox, as his tenant, for which he was to get a deed to that portion of the land covered by his, Garlington's, improvements. Since the time of this agreement, Garlington has been holding the land as the tenant of Knox, and has made a crop on it every year since that time. Besides having his improvements fenced, he built a cotton house within the inclosure, and has been using the same to store his cotton and corn. On October 4, 1910, 5 years and about 8 months after the original agreement of tenancy was made, the parties entered into the following written agreement:

"The State of Texas, County of Polk.

"Know all men by these presents: That I, W. H. Knox of said county and state, did on the 5th day of July, 1905, let and lease to W. H. Garlington 354½ acres of land off of the Wil-liam Isaacs survey situated, lying and being in Sabine county, Texas, and described as follows: Beginning at the southwest corner of a survey made for Willis Donaho, and running thence south 81 East with Donaho's line 830 vrs. to a corner, a stake, bearings S. 65 W. a pine 20 links 18 inches diameter S. 22′ W. 30 links a pine 6 inches in diameter, thence S. 9 W. 2400 vrs. to a corner stake bearings N. 26 W. 11 vrs. 21 links, pine 18 inches in diameter north 60 east 10 links 18 inches. Thence N. 81 W. with the William Isaacs league line. Thence N. 9 E. with the William Isaacs league line to the beginning corner. And whereas, said W. H. Garlington has held said land in his possession for the said W. H. Knox ever since the 5th day of July, 1905, and is yet in possession of same by having about 15 or 20 acres enclosed and in cultivation; and, whereas, the said Garlington is now the tenant of the said W. H. Knox, and, whereas, the said W. H. Knox is desirous of compensating the said W. H. Garlington for his tenancy of said land: Therefore the said W. H. Knox does hereby obligate and bind himself to make to the said W. H. Garlington a deed for 26 acres of said land to include that portion of the said 354½ acres of land now under fence and in cultivation by said W. H. Garlington, which 26 acres is described as follows, to wit: Beginning at the northeast corner of a 354½-acre survey off said league deeded by William Isaacs & wife to William A. Donahoe by deed dated May 1st, 1845. Thence north 18 west about 300 vrs. to a corner post oak and sweet gum marked X. Thence south 9 west 500 vrs. to corner, two post oaks marked X. Thence south 81 east to east line of said 354½ acres. Thence north 9 east to the place of beginning. Which said deed to said 26 acres of land is conditioned as follows: That, whereas, there is now a suit pending in the district court of Sabine county, Texas, wherein W. H. Knox is plaintiff and M. E. MacKechney and others are defendants $1520½, pending in the district court of Sabine county, Texas, and whereas, said suit has never been tried or disposed of; and, whereas, the said W. H. Knox claims the 354½ acres of land; and, whereas, the defendants in said suit claim one undivided one-half interest in said land: Now, therefore, if the said W. H. Knox shall recover in said suit, or otherwise establish his title to the said 354½ acres of land, then the said W. H. Knox shall make to the said W. H. Garlington an absolute deed to said 26 acres of land above described. If, however, the said W. H. Knox does not establish his title to but one-half of the said 354½ acres of land, then the said W. H. Knox will make an absolute deed to the said W. H. Garlington to an undivided one-half interest in said 26 acres of land, reserving, however, in any event, all the merchantable saw timber now standing, growing or being situated upon 26 acres of land or so much thereof as may be deeded to said W. H. Garlington by virtue of this contract.

"And I, the said W. H. Garlington, having examined the above and foregoing contract do hereby agree to all the stipulations and conditions therein contained and hereby agree to hold possession of the said 354½ acres of land for the said W. H. Knox until his title shall have been established to the same or any part thereof, with the right to use so much of said land as may be inclosed and in cultivation free of any rental charges therefor other than to hold the said 354½ acres of land as the tenant of the said W. H. Knox.

"Witness our hands on this the 4th day of October, 1910.    W. H. Knox.
    "W. H. Garlington."

This instrument was duly acknowledged by both parties, but is unrecorded.

Shortly after the execution of this instrument, the tenant, Garlington, without any

notice to Knox, had a survey made of his improvements, the lines of which survey were not introduced in evidence, but which included, in any event, the 26 acres including his improvements, although it extended over on other lines than those constituting the Knox land. Just before the above written instrument was executed, the 26 acres described therein was surveyed off at the instance of Knox, who instructed the surveyor to include in such survey the Garlington field, and to "square it up."

Appellants' first five assignments of error attack, in substance, the conclusion of the trial court that appellee was entitled to the land in controversy under the five-year statute of limitation. The first and second propositions submitted under these assignments are:

"The possession of W. H. Garlington as a tenant of appellee is insufficient, as adverse possession of the land in controversy, to sustain appellee's plea of 5 years' limitation, because prior to the lease from appellee to Garlington in 1905, Garlington had lived for 9 years upon a certain inclosed part of the land in controversy, claiming such part as his own, in his own right, and restricting his claim to such inclosed part. And upon the lease to him from appellee, nor thereafter at any time did Garlington or appellee, by either action, claim, or conduct, do anything to denote or suggest any change in the extent or character of the claim of right upon which the possession of Garlington was based, or give notice in any way that he had begun to claim more than the restricted part that he had inclosed, or that he had ceased to claim the land in his own right, but was claiming the entire tract in controversy as tenant of appellee. But the character and extent of his possession and claim of right was identical with that which he asserted prior to his lease from appellee."

"Appellee has not shown sufficient possession to sustain his plea of 5 years' limitation, because the tenancy of W. H. Garlington, upon which appellee relies, is shown to have been under a lease contract restricting his right of occupancy, use, cultivation, or enjoyment to a certain designated portion of said land."

The decisions on the question as to the extent of an adversary's possession for the purpose of determining the amount of land to which the claimant has thereby acquired title by adverse possession are divisible into two classes, viz.: First, where the claimant is in possession without color of title; and second, where possession is under color of title.

[1] Where land is not in actual possession of any one, the possession, by construction of law, is deemed to be in the legal owner; or, in other words, the legal owner, by virtue of his title, is deemed to be in constructive possession of all of the land, when there is no actual possession in another. Whitehead v. Foley, 28 Tex. 268.

[2] One claiming title by adverse possession, but not holding under color of title, acquires no title to any land except that which is in actual possession, and, under the 10-year statute of this state, providing its requisites have been met, to 160 acres. Bracken v. Jones, 63 Tex. 184; Claiborne v.

Elkins, 79 Tex. 380, 15 S. W. 395; Evans v. Foster, 79 Tex. 48, 15 S. W. 170; Craig v. Cartwright, 65 Tex. 413.

[3] The general rule is well settled that where a person enters under color of title into the actual occupancy of part of the premises described in the instrument giving color of title, his possession is not considered as confined to that part of the premises in his actual occupancy, but that such occupant acquires possession of all of the land embraced in the instrument under which he claims, provided, of course, there is no other person in the actual occupation of the part of the premises not actually occupied by him. Craig v. Cartwright, 65 Tex. 413; Whitehead v. Foley, 28 Tex. 266.

[4] However, actual possession of a part of the land under color of title will not draw to it constructive possession of the balance, unless such color of title is also accompanied by claim of title coextensive with the boundaries of the conveyance. Ivey v. Petty, 70 Tex. 178, 7 S. W. 798; Bayne v. Denny, 21 Tex. Civ. App. 435, 52 S. W. 983; Pope v. Riggs, 43 S. W. 306; Noland v. Weems, 141 S. W. 1031; Village Mills Co. v. Houston Oil Co., 186 S. W. 785.

[5] Adverse possession will not extend beyond the claim when such claim falls short of the boundaries contained in the instrument constituting color of title. Constructive possession may always be restricted by the acts and declarations of the occupant, indicating that he does not make his claim coextensive with the boundaries of his color of title. Haddock v. Leary, 148 N. C. 378, 62 S. E. 426; Village Mills Co. v. Houston, Oil Co., 186 S. W. 785.

[6] Where real estate is held in common, and one tenant assumes to convey the entire estate, and does convey it by metes and bounds, the deed will give color of title to the whole tract, and an entry by the purchaser thereunder, claiming title to the whole, will operate as an actual ouster and disseisin of the cotenant. Rosborough v. Cook, 148 S. W. 1120.

[7, 8] Under a deed from Derrough to Knox, dated May 19, 1900, the appellee acquired color of title to the one-half interest, the legal title of which was in the appellants. And at this point it is necessary to inquire as to the nature of the entry of the appellee's ancestor, Knox, and the nature and extent of the claim of the appellee and his ancestor, Knox, to the land. If W. H. Knox had a tenant on the land claiming to the boundaries of the whole tract, and otherwise meeting the requirements of the 5-year statute of limitation there would be an ouster and disseisin of the cotenant, and after the expiration of the required time, title by limitation would ripen into a perfect title. For within the rule that actual possession of a part of a tract of land under color of title gives constructive possession to the extent of the boundaries designated in the convey-

ance, the possession of a part of a tract of land by a tenant of the holder of the color of title, who has been put into possession under a lease which does not restrict his possession to any definite part of the tract, will give the lessor constructive possession coextensive with the boundaries of the conveyance, since the possession of the tenant inures to the benefit of the lessor. But on the other hand, if the lessee is let into possession of a part of a tract under an instrument describing it by metes and bounds, specifically the lessee's possession is coextensive only with those metes and bounds, and such possession is not available to establish constructive possession of the landlord, to the whole tract. Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 94; Read v. Allen, 63 Tex. 154; Texas Land Co. v. Williams, 51 Tex. 51; Wier Lbr. Co. v. Conn, 156 S. W. 276; Robinson v. Jones, 2 Tex. Civ. App. 316, 22 S. W. 15; Village Mills Co. v. Houston Oil Co., 186 S. W. 785.

The witness, Garlington, touching upon his occupancy of the land, and his tenancy under Knox, testified, substantially:

"I know where the William Isaacs survey is. I know where that portion of it is that is claimed by Mr. Knox, being 354 acres of land. That survey is somewhere about 300 or 400 yards from my house. I have some of that survey inclosed, in cultivation, in possession. There is somewhere about 15 acres of it inclosed, maybe a little more. As to how I am in possession of it, will say I am on it as a tenant of Knox. I have some of the survey enclosed with a fence. I have about 15 acres of it fenced up. I fenced that land up in the spring of 1896; that is, a part of it, not all of it. I say that I am holding it as a tenant for Mr. Knox, W. H. Knox during his lifetime, and since then for Hiram. I have been holding it that way since some time in 1905, the early part of the year. I had an agreement with Mr. Knox to hold it as his tenant. As to whether or not I held it that way since some time in February, 1905, up to this time, will say some time in the early part of the year we made the agreement. * * * I have made a crop on it every year since that time. Besides having it fenced, I have a cotton house on it. I have rebuilt that cotton house. I put one on it in 1906 in the fall of 1906, and it got 'shackily,' and I built one over on the other side. I used it for cotton and corn and such as that. I say that I have been holding that continuously since February, 1905, until this time for Mr. Knox, as his tenant, by contract with him."

On cross-examination he said:

"This 26 acres described in this instrument has been marked off, surveyed. It was surveyed just about the time or just after Mr. Knox was up there. I disremember just exactly when it was made. It was surveyed just before or just after he was up there when he first came to me to get me to take it as his tenant; that is, the 26 acres that I am to get in this instrument. That was made shortly after Mr. Mantooth and Mr. Knox and Mr. Arthur came up there. My cultivated land is on this 26 acres, and all of my fence and improvements are on this 26 acres. When I went there I didn't go there as Mr. Knox's tenant. * * * As to whether or not that 26 acres was surveyed off for me, will say it was to be my portion. I was to know where mine was. From that time I reckoned that 26 acres was to be considered my land. I have been claiming it ever since it was surveyed

as my land. I haven't been claiming that 26 acres as Mr. Knox's land. It is on a portion of the Knox survey. Q. I am talking about this 26 acres. You haven't been in possession of any of the balance of that tract, have you? A. I kept a watch over it. I haven't got any fence around any of the rest of Mr. Knox's land. The only possession and improvements I have got is on my own land. I cleared most of it in 1905, and ever since then or right immediately afterwards I had it surveyed, and I have been claiming that 26 acres as my land."

On redirect examination, the witness said:

"I said that I have been claiming this land. I didn't claim the land until I had stayed on it a sufficient length of time to perfect the title. I agreed to hold possession of the land for Mr. W. H. Knox, and by reason of holding possession, I was to get 26 acres of land. I was not to get 26 acres unless I held possession of the land for Mr. Knox."

On recross-examination, he further said:

"I cleared this land, and I made a crop on it in 1896. * * * As to whether or not I cleared that land because I had a deed to it (deed from one McKechney) and because I had been in possession when Mr. Knox first came to see me, will say I claimed it because I had it in possession. I never did claim it under that deed. * * * I do not remember the month when Mr. Knox came up there to see me about this. It was some time the first of the year. I think they came from court down here. I think they had been down here at court and came up there. I mean Mr. Arthur and Mrs. Mantooth and Mr. Knox. I think it was some time the first of the year 1905. It was not in July. It was in the first of the year. I think they came from court down here. I think the spring court was going on at that time. * * * I just had that surveyed off and Mr. Knox had nothing to do with the surveying of it, he had nothing to do with it at all. * * * When I met him on the road there wasn't any agreement (with Knox) about how much I was to have. It was to cover my improvements. It was to be surveyed in a square form, that is the way it was surveyed."

The contention of appellants that Garlington for 9 years prior to the execution of the verbal lease between him and Knox, the owner, had held, used, and cultivated the 26 acres included in said lease, claiming the same in his own right, is not sustained by the evidence. The evidence does not disclose definitely how much land constituted Garlington's improvements prior to 1905, or how much he had inclosed. It does show expressly that he claimed most of the 26 acres which he was to receive under his agreement with Knox, subsequent to 1905. It was not until after this agreement was made that he had a survey of his 26 acres run out, and thereafter his claim to this 26 acres was, by virtue of Knox's agreement and in subordination of Knox's title, and not adverse to it. The fair deduction from the evidence is that prior to 1905 Garlington was claiming and had improved a tract less than 15 acres, and after the agreement was made, he cleared most of the 26 acres, and, in a measure, enlarged his improvements generally.

[9] Although by reason of the defects in the chain of title above mentioned, the appellants were, by construction of law, tenants in common with the grantees in the defective instruments, yet there was no fiduciary re-

lationship arising out of such tenancy. The very instruments under which they, the grantees, were claiming showed a good-faith effort to convey and acquire the legal and equitable title to the entire tract of land, and thus destroy any interest remaining in the land to the appellants or their predecessors in title. Although the 5-year statute of limitation could not be based on the married woman's deed on account of its defective acknowledgment, and it, therefore, not having the character "of a duly registered deed," still the deed from Derrough to Knox, being free from defects and properly recorded, meets that particular requisite of the law, and will support a claim under the 5-year statute. So far as the instruments in appellees' chain of title are concerned, they speak, in positive and emphatic terms, a purpose and intention to show no recognition or admission of any interest in appellants or their predecessors in title to any of the land in controversy, but, on the contrary, their terms show an active, open, positive, and hostile assertion of title in the appellee and his predecessors in title to the entire 354 acres.

[10, 11] While it was held in the case of Holland v. Nance, 102 Tex. 177, 114 S. W. 346, and which is relied upon by appellants for a reversal of this case, that the recording of the deed does not constitute possession of land, and is, in fact, not notice of possession, yet the instruments in appellee's chain of title in the instant case not being void, and in themselves undertaking in good faith to convey the entire tract of land, including the interest of appellants, and the deed from Derrough to Knox having been duly recorded in Sabine county, constituted notice to the appellants of the character and nature of the adverse claim of appellee to the land. Carr v. Alexander, 149 S. W. 218. In the latter case, it was said by the court:

"Appellants were charged with knowledge of all that the records of the county disclosed; and such being the case, it seems to us that, having notice of the fact that the Arledges (who were claiming the entire tract), had sold and conveyed to others as much of the land as they had any right to, then when thereafter they remained in possession of the balance of the tract, which in its entirety rightfully belonged to Mrs. Carr, the latter was charged with notice that such possession of the Arledges was adverse to any right of hers. Furthermore, for more than 10 years before this litigation commenced, the land records of Williamson county disclosed the fact that the Arledges were asserting an adverse claim to the entire 400 acres, because the deed from M. P. Arledge and his wife to the McGinnises, conveying 100 acres off the south end of the 400-acre square, described that tract as the M. J. Arledge 400-acre survey, and contains the following statement and recital: 'The said 400-acre tract was the tract that my wife, Elizabeth Arledge, fell heir to from her father Mathias Prewitt's estate.' Thus it appears that the exclusive claim of the Arledges had become notorious, not only by reason of the facts referred to in the findings of the trial court, but by reason of the fact that their exclusive claim was embodied in a recorded deed, made by the Arledges, conveying a portion of the 400-acre tract, in which deed it was asserted, in substance, that Mrs. Arledge had title to the entire 400 acres."

All of the instruments in appellee's chain of title, as hereinbefore stated, asserted a denial of any interest of appellants in and to the land. This case is not based upon the same state of facts as supports the principle announced in the Nance Case. In the latter case, the court simply held that an adversary, who inadvertently put a fence a few varas over the boundary line on to the land of another, and who thereafter, when he discovered his error, obtained a deed from some one who was not connected with the title, could not, by the recording of said deed, and without any further change in the nature of his possession, charge notice of an adverse holding of said land to the boundaries in said deed. This case is certainly expressive of a true and logical principle. No real owner ought to be deprived of his land, under the statute of limitation, unless he has actual notice of the adverse claim thereon, or constructive notice thereof, based upon the open, hostile, and notorious assertion of claim and possession of the one so seeking to acquire it adversely. In the Nance Case the facts and circumstances connected with the adverse holding were simply not sufficient to bring home constructive notice to the real owner of any adverse claim to his land. In the present case, the ancestors of appellants, in good faith, undertook to sell and divest themselves of all of the title to the land in controversy, specifically setting forth in the purported conveyances the land by metes and bounds. These conveyances were fatally defective, and therefore, technically, did not pass title to the wife's interest. All of the instruments were executed in 1871. Between that time and the filing of this suit, in September, 1914, no attempt had been made to repudiate what, in good faith, their ancestors did 43 years previously, and not until now do the appellants, grandchildren of the main actors to the original sale, seek to set it aside, and recover their grandmother's interest, by reason of such defect in the instruments evidencing the conveyance. In 1901, Derrough, the purchaser from appellants' ancestors, sold the entire tract of land to W. H. Knox, again descriving the land by specific metes and bounds. This instrument met all of the legal requirements of a deed, and was duly recorded in Sabine county on the 8th day of January, 1901. In 1905, the grantee under that deed found Garlington on the land, having something less than 15 acres in improvements thereon, and made a verbal agreement with him, whereby he leased him the entire 354½ acres, and Garlington agreed to become Knox's tenant, for which Knox agreed to give him, the tenant, 26 acres, including his improvements. How much or how little additional improvements were added after this lease agreement is not definitely shown by the evidence, but some acreage was added to the improvements.

At any rate, Garlington remained on the land as Knox's tenant for more than 5 years under this verbal agreement, and Knox, in the meantime, claimed the land and paid the taxes thereon. During the time Garlington was on the land under the Knox lease, and in addition to having the improvements on the 26 acres, he also testified that he "watched over" the entire tract of 354½ acres. It would have been better, perhaps, to have had him state just what acts he performed, instead of stating his conclusion as to them. However, "watching over" anything is to be construed as preserving, preventing spoilation, encroachments or trespasses, and having the right of and exercising control or dominion over anything.

[12] Under the facts of this case, we hold that the appellants were charged with notice of Knox's adverse claim and possession of the land, so as to sustain the 5-year statute of limitation. Holloway v. Purington, 175 S. W. 507; Carr v. Alexander, 149 S. W. 218.

Even though it be conceded that the written lease executed between Garlington and Knox in 1910 is restrictive in its nature, and falls within the rule announced in the case of Houston Oil Co. v. Kimball, 114 S. W. 667, and other subsequent cases following that decision, the full five years had run under the verbal agreement, and therefore limitation was perfected before the written lease was executed. Under the verbal agreement there was no express provision restricting appellee's possession to any particular portion of the land.

We cannot agree with appellants' contention that the evidence fails to show that Garlington ever claimed or exercised dominion over any of the land outside of the 26 acres; nor can we agree with the contention that the evidence shows that he claimed such 26 acres, not as appellee's land, but as his own. The claim of Garlington to the 26 acres was simply under the tenancy agreement, and in recognition of the Knox title, he making such claim under the terms of the lease contract which provided that such land should be his for services rendered as Knox's tenant.

Under the third proposition, appellants contend appellees and appellants being tenants in common to the land in controversy, the possession of W. H. Garlington was insufficient to support appellee's plea of adverse possession as to his cotenants, appellants, because there is no actual notice shown of the adverse claim, and no conduct or any other acts of notoriety referring to or asserting the adverse claim sufficient to raise a presumption of notice to appellants.

What has heretofore been said disposes of this proposition. The due registration of the Derrough deed to Knox, and the claim of title and adverse possession of Knox through his tenant, Garlington, was ipso facto notice to appellants that appellee was asserting claim to the whole tract, and was in adverse possession thereof. Robles v. Robles, 154 S. W. 230; Carr v. Alexander, 149 S. W. 218. Actual notice was not necessary.

Finding no error in the judgment of the trial court, appellants' assignments of error, together with the propositions thereunder, are overruled, and judgment of the court below affirmed. It is so ordered.