**DUNCAN et al. v. ADAMS et al.**

No. 4491.

Court of Civil Appeals of Texas. Beaumont.

March 18, 1948.

Rehearing Denied April 7, 1948.

A. M. Huffman and George P. Kirkpatrick, both of Beaumont, for appellants.

Fountain, Cox & Gaines, of Houston, and T. Gilbert Adams, of Jasper, for appellees.

MURRAY, Justice.

The appellees, F. P. Adams et al., brought this suit in trespass to try title againt William Duncan, the executor under the will of William Duncan, the devisees of the will, and the unknown heirs of those above and their unknown heirs, for the title to the William Duncan 640 acre survey, Abstract 136, in Jasper County, Texas. The defendants were duly cited by publication. Certain parties claiming to be the heirs of William Duncan and the heirs of devisees under the will of William Duncan filed a formal answer to said suit and thereafter they filed an amended answer and a cross-action against plaintiffs for the title and possession of the same tract of land. Appellees answered such cross-action by general denial and pleaded the three, five, ten and twenty-five years' statutes of limitation. Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519. The trial court appointed an attorney to represent all defendants cited by publication who were not represented by the attorneys who filed the answer and cross-action. At the trial the appellees took a non-suit as against those defendants answering and filing the cross-action, without admitting that any of the defendants

cited by publication and represented by the attorney appointed by the court were among those answering and filing cross-action, and the appellees became only cross-defendants as to them, remaining in the case as plaintiffs only as to those defendants represented by the attorney appointed by the court. Before judgment was rendered the cross-plaintiffs filed a disclaimer to the surface of the Duncan Survey and to one-half of the minerals located thereunder.

The cause was tried to the court without a jury and judgment was rendered for the appellees against the defendants who had not filed the answer and cross-action, judgment being for fee simple to the William Duncan 640 acre survey, and judgment was also rendered that the cross-plaintiffs take nothing against the appellees by their cross-action.

An appeal bond was filed and the attorneys representing the defendants who filed an answer and cross-action and disclaimer to the surface and one-half of the minerals, filed an appeal bond and gave notice of appeal for all of the persons originally sued as defendants. The appellees have filed a motion to dismiss this appeal on the ground that since the attorneys for the parties appealing have no authority to appeal in behalf of the parties represented by the attorney appointed by the court, the appeal bond is fatally defective as to all parties named in the appeal bond as appellants. They include with such motion an alternative motion that in event the entire appeal be not dismissed, that the appeal be dismissed as to certain named defendants and all parties defendant for whom the trial court appointed an attorney. We have concluded that the attorney who was appointed by the trial court had the duty and responsibility of determining after judgment whether an appeal should be taken in behalf of his clients, and therefore that he and not the other attorneys had the authority to execute such an appeal bond. We do not believe, however, that the appeal bond executed in such a manner as is indicated here is defective as to the parties appealing. A new appeal bond will not be required in behalf of the parties represented by the attorneys who desired to appeal.

The appellees' motion to dismiss the entire appeal is overruled. Their alternative motion is granted and the appeal of all the parties originally named as defendants and represented in the trial court by Hon. Lewis Lanier, who was appointed to represent such defendants by the trial court, is dismissed. It is not considered that such dismissal operates to prejudice the appeal of the parties represented by the other attorneys, Hon. A. M. Huffman and Hon. Geo. F. Kirkpatrick. Such parties are before this court as appellants from the judgment which decreed that they as cross-plaintiffs take nothing in their suit against the cross-defendants.

At the request of cross-plaintiffs below, the trial court filed the following findings of fact and conclusions of law:

### Findings of Facts

1. The 640 acres, the ownership of which is in controversy in this suit, was patented to William Duncan in 1842 and is known as the William Duncan Survey, Abstract 136, Jasper County, Texas.

2. The patent was issued upon field notes of survey made for George William Duncan, and General Land Office records show the scrip basing the survey to have belonged to G. W. Duncan.

3. William Duncan, a resident of Philadelphia, Pennsylvania, died testate in Philadelphia in 1864.

4. The William Duncan of Philadelphia, who died testate in 1864, is one and the same as the William Duncan, patentee of the William Duncan Survey.

5. The will of William Duncan was admitted to probate in the Register's office for the City and County of Philadelphia, Pennsylvania, in the year 1864.

6. Letters testamentary under the will of William Duncan were granted in 1864 to Anna C. Duncan, the wife of William Duncan, James J. Duncan, George W. Duncan, sons of William Duncan, John G. Ford, nephew of William Duncan, and William D. Moulder, a grandson of William Duncan.

7. The William Duncan 640 acre survey in Jasper County, Texas, constituted a por-

tion of the residuary estate of William Duncan which was devised, subject to a life estate in a one-third of the income from such residuary estate in Anna C. Duncan, wife of William Duncan, to the heirs of William M. Duncan, deceased; the heirs of Joseph M. Duncan; to George W. Duncan, his heirs or assigns; Mary Ann D. Ford, her heirs and assigns; Sarah LaSell, her heirs and assigns, and to the heirs of Henry H. Duncan, as tenants in common.

8. Anna C. Duncan, wife of William Duncan, died prior to 1881, as did all of the other executors of the will of William Duncan except John G. Ford. No accounting was rendered by any of the executors of the will of William Duncan after 1881, and there was no need for any.

9. No ancillary administration on the estate of William Duncan was ever had in the State of Texas.

10. A certified copy of the will of William Duncan and its probate was filed for record in Jasper County, Texas, in 1901,

11. On July 31, 1906, John G. Ford, as sole surviving executor of the estate of William Duncan, executed a deed to W. J. B. Adams, R. F. Adams, and Abel Adams, ancestors of the plaintiffs and cross-defendants F. P. Adams et al., all of whom are hereinafter referred to as the "Adamses", purporting to convey for a consideration of $4,480, the 640 acre William Duncan Survey, Jasper County, Texas, reserving a one-half interest in the minerals, and especially covenanting that he had not done or suffered to be done anything to encumber, impair or charge the title or estate purported to be granted.

12. At the time of the Ford deed in 1906 taxes were due on the William Duncan 640 acre survey for the years 1902, 1903 and 1904.

13. At the time of the Ford deed in 1906 there were outstanding limitation claims to 320 acres of the 640 acre William Duncan Survey, to-wit: limitation claim to 160 acres in the northeast corner by T. A. Bilbo and limitation claim to 160 acres in the northwest corner by Fred Burrell, tenant of the Adamses.

14. The limitation titles of Fred Burrell and T. A. Bilbo were established in the suit of Adams v. Burrell, in the District Court of Jasper County, Texas, in 1908, in which the Duncans were not a party.

15. Fred Burrell and T. A. Bilbo each went into possession of portions of the William Duncan 640 acre survey, living on, using, and cultivating the same, as early as 1890.

16. In 1908 and continuously thereafter the Adamses, having lost by limitation 160 acres of and having been declared the owner by limitation of 160 acres of the William Duncan 640 acre survey, which Ford purported to convey to them, repudiated all rights of any others claiming an interest in the William Duncan Survey and openly and notoriously with a tenant in possession at the time hereinafter stated claimed the fee simple title to the William Duncan 640 acre survey less the 160 acre Bilbo tract.

17. In 1914 the State of Texas sued, including among the defendants, Ford as executor of the estate of William Duncan, the Adamses, and the unknown owners of the William Duncan Survey, for taxes due on the Duncan Survey, except the Bilbo 160 acres, for years 1902, 1903, 1904, 1906, and 1907. The State of Texas recovered judgment, foreclosing its tax lien, and sold this 480 acres in satisfaction of its lien. The judgment does not describe the land.

18. The Adamses in 1914, were successful bidders for the title to the William Duncan 640 acre survey less the Bilbo 160 acre tract in competitive bidding at an open and public sale conducted by the Sheriff acting under order of sale issued in the last mentioned proceeding accurately describing the land.

19. The sheriff of Jasper County, Texas, on September 8, 1914, executed a deed, which deed purported to convey by metes and bounds the fee simple title to the 480 acres of the William Duncan Survey, being the entire 640 acre survey less the Bilbo 160 acre tract, to the Adamses. This deed was filed for record September 11, 1914. It accurately described the 480 tract. The Adamses have claimed under this deed since its execution.

20. Soon after execution of the Sheriff's deed to the William Duncan 640 acre survey less the Bilbo 160 acres, the Adams-

es made application to the Court, as owners in fee simple title to the William Duncan Survey less the 160 acre Bilbo tract, to have refunded to them that portion of the purchase price which they had paid in excess of the amount due for taxes on said land. The Court allowed the application and refunded to the Adamses such excess.

21. The Adamses in 1926 acquired the Bilbo limitation title to 158 of the 160 acres awarded to T. A. Bilbo in the suit of Adams v. Burrell.

22. The Bilbos had peaceable and adverse possession, living on, cultivating, using and enjoying their 160 acres from or prior to 1890 to 1926.

23. The Burrells and other tenants of the Adamses had peaceable and adverse possession, living on, cultivating, using and enjoying a portion of the William Duncan 640 acre survey outside of the Bilbo 160 acres from or prior to 1890 to 1926.

24. From 1926 through 1938 there was intermittent logging and timber cutting on the William Duncan 640 acre survey by persons holding under timber conveyances executed by the Adamses.

25. From 1935 up until and through the time of trial, April 17, 1947, Mr. Calvin Williamson, as a tenant of the Adamses, was in open, hostile, and notorious possession of the William Duncan 640 acre survey, cutting ties, timber, and wood, digging a large tank, pasturing his cattle, and enclosing the entire William Duncan Survey within the fences of two of his pastures. The western portion was completely enclosed by stock proof fences, and used as a pasture by Mr. Williamson from the latter part of February, 1936 to date of trial. The eastern part was similarly enclosed and used from 1937 to 1943.

26. From 1908 through 1936 inclusive the Adamses were assessed taxes on the fee simple title to the parts of the 640 acre Duncan Survey claimed by them and paid the said taxes before delinquency. From and including the year 1937 to time of trial the taxes were paid without delinquency except in 1937 a $\frac{1}{42}$nd interest became delinquent before payment, in 1938 a $\frac{1}{7}$th interest became delinquent before payment, in 1941 a $\frac{2}{3}$rd interest became delinquent before payment, in 1942 a $\frac{1}{3}$rd interest became delinquent before payment, all of which delinquent taxes were paid before May, 1944.

27. The Duncans have not paid and have not offered to pay any portion of the taxes due on the William Duncan 640 acre survey since 1908.

28. The Duncans have not contributed to nor have they offered to contribute to the Adamses any portion of the purchase money paid by the Adamses at the tax sale of the William Duncan Survey less the Bilbo 160 acre tract in 1914.

29. The Adamses and those whose title they have acquired have held possession of the William Duncan Survey prior to any possession of the Duncans.

30. The Duncans have not shown themselves to be the holders of the interests of five of seven devisees under the will of William Duncan. The Court, disposing of the case on the other grounds, does not pass upon the sufficiency of the evidence, or its admissibility to establish descent of the Duncans from William Duncan's other two groups of devisees, or to establish their legal ownership of the claims of such two groups.

## Conclusions of Law

1. The 1906 deed from John G. Ford as executor to the Adamses was void.

2. At the time of the Ford deed in 1906 to the Adamses, outstanding limitation title to 320 acres of the William Duncan 640 acres had matured: 160 acres in T. A. Bilbo and 160 acres in Fred Burrell, tenant of the Adamses. These titles are now owned by the Adamses.

3. The Court does not rule on the admissibility in evidence of the depositions of Ronald B. Duncan and Charles (Carl) E. Duncan.

4. The judgment in the tax suit in 1914 was void for the reason that the description of the land contained therein was insufficient.

5. The Adamses and those whose titles they have acquired, have acquired in fee simple title by limitation to the entire William Duncan 640 acre survey, Jasper County, Texas.

All of the findings of fact are supported by the evidence, with the exception of findings Nos. 16 and 17. Finding of fact No. 16 is not supported by any evidence of possession of minerals under the William Duncan Survey. Finding of fact No. 17 is incorrect in finding that in the 1914 tax suit the State of Texas sued for taxes due on the Duncan Survey, "except the Bilbo 160 acres". Pleadings in the tax suit were not in evidence, but the judgment was offered by the appellees, the Adams family. This judgment recited that the tract of land on which the taxes were due and on which foreclosure of a tax lien was ordered was "four hundred eighty (480) acres of land lying and being situated in Jasper County, Texas, out of a Six Hundred and Forty (640) acre survey patented to William Duncan by the Republic of Texas, February 26, A.D., 1842, Abstract No. 136, Patent No. 173, Certificate No. 348, Volume 1". The judgment does not contain the words "except the Bilbo 160 acres".

Appellants bring their appeal before this court, based upon 14 points of error. Their first point attempts to complain of the action of the court in rendering judgment in favor of the appellees, the Adams family, against those persons who were, as defendants in the trial court, represented by counsel appointed by the court, who did not appeal from the judgment of the trial court. We have disposed of this point in passing on motions of the appellees in regard to the appeals of those parties not represented by counsel for the appellants before us. As will be noted from our holding hereinafter under appellants' eighth point, it is of no real importance in the determination of this appeal that the attempted appeal of those parties was dismissed, for the reasons given in our discussion of appellants' eighth point. The evidence was insufficient to establish their descent from the original patentee of the survey, William Duncan.

The appellants' second and third points are that the trial court erred in rendering judgment that appellants take nothing by their cross-action against the appellees as to the William Duncan Survey and that the court erred in not rendering judgment in their favor for one-half of the oil, gas and other minerals in and under the William Duncan Survey, for the reason that the uncontroverted evidence showed title in the appellants as cross-plaintiffs, to such minerals. The appellants' fourth point is that the trial court erred in the sixteenth paragraph of the findings of fact, in finding that in "1908 and continuously thereafter the Adamses * * * repudiated all rights of any others claiming an interest in the William Duncan Survey and openly and notoriously, with a tenant in possession at the times hereinafter stated, claimed the fee simple title to the William Duncan 640 acre survey, less the 160 acre Bilbo tract", for the reason that there was no notice given to appellants by the Adamses of a repudiation of the reservation of minerals by the Duncan estate and no evidence of any acts on the part of the Adamses that will constitute constructive notice of such repudiation. Appellants seventh point is that the trial court erred in its seventeenth finding of fact, wherein it is stated that "in 1914 the State of Texas sued, including among the defendants the executor of the estate of William Duncan, the Adamses and the unknown owners of the William Duncan Survey, for taxes due on the Duncan Survey, except the Bilbo 160 acres", for the reason that the undisputed evidence showed that said suit was for taxes due on 480 acres of the William Duncan 640 acre survey. Appellants' ninth point is that the trial court erred in his first conclusion of law wherein he stated, "the 1906 deed from John G. Ford as executor to the Adamses was void" for the reason that there was no evidence introduced upon the trial of the cause that would constitute said deed a void instrument. The appellants' tenth point is that the trial court erred in his first conclusion of law, quoted above in the ninth point, for the reason that if said deed was not wholly valid it was voidable only at the election of the devisees under the will of William Duncan or their heirs. Appellants' eleventh point is that the trial court erred in his first conclusion of law quoted above in their ninth point, for the reason that the Adamses, who were ancestors of appellees, were the grantees in said deed and claimed the land thereunder and then used said deed as a muniment of title in defending against the claims of Bilbo and Burrell in cause

No. 1313, styled W. J. B. Adams et al. v. Arthur Burrell et al., and are estopped to question the validity of said deed and its effectiveness to pass to them the title of the William Duncan Survey and to reserve one-half of the oil, gas and other minerals to the estate of William Duncan. The appellants' twelfth point is that the trial court erred in his first conclusion of law quoted above in their ninth point, and in denying appellants recovery for their minerals for the reason that the Adamses acquiesced in the Duncan title and ratified their deed from John G. Ford, executor, by accepting said deed, paying the consideration therefor and relying upon same as their record title in defending said title from adverse claimants. The appellants' thirteenth point is that the trial court erred in his fifth conclusion of law wherein he states, "the Adamses and those whose titles they have acquired have acquired in fee simple title by limitation to the entire William Duncan 640 acre survey in Jasper County, Texas", for the reason that the undisputed testimony showed that all occupancy of the William Duncan Survey by the Adamses after their deed from the executor of the William Duncan estate was of the surface only and could not extend to the mineral estate reserved by the Duncan estate in said deed.

All of the above points will be discussed together. It is apparent that the status of the deed from John G. Ford, executor of the William Duncan estate, is vital to the determination of this appeal. William Duncan, under whom the appellants claim, died testate in 1864 in Philadelphia, Pennsylvania. The will of William Duncan, duly probated in Pennsylvania, after making various special bequests, devised a life estate in one-third of the income from his residuary estate to his wife, Anna C. Duncan, and devised one-seventh of the residuary estate to each of his seven children or their legal representatives and to each group as tenants in common with the other devisees. The will appointed five executors with very full powers of sale. A codicil changed one devisee: the one-seventh devised in the will to a son, James, was given to the wife of James, Anne C. Duncan. The will was filed for record in the Deed Records of Jasper County, Texas, in 1901.

There was no ancillary administration in Texas. In 1906 John G. Ford purported to act as the sole surviving executor of the estate of William Duncan, deceased and executed a deed, using the words "grant" and "convey" to W. J. B. Adams, R. F. Adams and Abel Adams, ancestors of the appellees, all of the William Duncan Survey in Jasper County, reserving one-half of the minerals in and under said land and specially covenanting that he had not done or suffered to be done anything to encumber, impeach or charge the title of the estate purported to be granted. It recited a paid consideration of $4,428. The deed was filed for record in Jasper County. When the appellants offered this deed in evidence the appellees made many objections thereto. The principal objections were that the Ford deed was void because the power of sale given to the executors under the will had expired long prior to the date of the execution of the deed, and that it was void because, since there was no ancillary administration in Texas, a foreign executor of a will had no authority or power to execute a conveyance of lands in this State. The trial court overruled the objections to the deed, but in his first conclusion of law he held that it was void.

■■ The appellees, Adams family, did make use of the Ford deed in their litigation with Bilbo and Burrell to establish themselves as owners of the record title to the Duncan Survey. They, the Adams family, have established by the evidence a limitation title to the surface of the William Duncan Survey and to the entire fee simple estate, provided the deed from Ford, as executor of the William Duncan estate, is void and of no effect as to them. The appellees contend in their brief that such deed was utterly void and was of no effect to reserve one-half of the minerals under the Duncan Survey to the heirs and devisees of William Duncan. The appellees first demonstrate by lengthy quotations from authorities in Pennsylvania and Texas that even though very wide powers of sale be conferred upon the executors of a will, such powers must be strictly construed and are limited to the primary purposes of the office of executor; that such powers can be exercised only in aid of other pow-

ers and duties devolving on him in carrying out the testator's intentions or purposes; that when such purposes have been carried out and the debts and legacies of the estate paid and the estate distributed to the heirs and devisees, such power of sale is terminated. They say that Ford's authority to sell the land expired and also that since no ancillary administration was had in Texas, his deed was void. Under the provisions of Articles 8301 to 8305, inclusive, Revised Civil Statutes of 1925 and Smith v. Allbright, Tex.Civ.App., 261 S.W. 461 and Lane v. Miller & Vidor Lumber Co., Tex. Civ.App., 176 S.W. 100, 103, we believe that if Ford as executor in the Pennsylvania will had authority to sell the lands of the William Duncan Survey in Jasper County then there was no need for an ancillary administration of the estate, and the filing of such deed in the Deed Records of Jasper County would constitute a muniment of title thereto. At this point, however, we are confronted with the proposition that is urged by the appellants, that even if Ford's authority to execute a deed had actually expired the deed still was not void but was merely voidable at the instance of some of the Duncan heirs or Ford the executor; that since the ancestors of appellees secured the deed from Ford as executor, placed it of record in Jasper County and received benefits as grantees thereunder by using it to prosecute their suits against Bilbo and Burrell, they are not in position to contest the validity of the Ford deed and the mineral reservation contained therein and are estopped from contesting the validity of such reservation. We are in accord with this contention. When the Adamses accepted the deed and used it in the Bilbo and Burrell litigation as a basis for their showing of record title to the William Duncan Survey they accepted it as a link in their chain of title and they are bound by all the terms thereof. We cannot see that it could be of assistance to the appellees here to show that they lost title to some of the land by limitation and that some taxes were delinquent on the land at the time the deed was executed. As between the parties to this law suit the mineral reservation in the Ford deed must be regarded as valid and binding upon both sides to the controversy.

■ Once the Ford deed with its mineral reservation was established in appellees' chain of title and it was shown that the appellees accepted it and received benefits from it, the reservation of one-half the minerals in the grantor must be regarded as having effectively severed one-half the minerals from the surface estate and the other unreserved half of the minerals. See Woldert v. Skelly Oil Co., Tex.Civ. App., 202 S.W.2d 706 and cases therein cited; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626, portions of which opinion are quoted from by both appellants and appellees here; Doty et al. v. Bernard et al., 92 Tex. 104, 47 S.W. 712, 713.

After determining as between the Adams family and appellants that the Ford deed is valid and effectively severed one-half the minerals, the next question arises as to whether the Adams family matured limitation title against the appellants. The outstanding fact in this record in that regard is that no person has gone into possession of any of the minerals under the Duncan Survey. All of the use and possession made of these lands by the Adams family, as shown by the evidence, has been such use and possession as was entirely consistent with their ownership of the surface and one-half of the minerals, as conveyed to them in the Ford deed. No such use as has been shown by the evidence to have been made by them was inconsistent with or adverse or hostile to the reserved ownership by the Duncan estate of one-half of the minerals. Since the void tax deed was placed on record by the appellees in Jasper County, their use and possession of the lands in the Duncan Survey was the same as it was before the tax deed was executed and filed for record.

■ The trial court held that the tax deed to the Adams family was void. We believe this holding to be correct. The judgment in the tax suit, the basis of the tax deed, as pointed out above, did not properly describe the land conveyed, since it merely described it as 480 acres of land

out of 640 acre survey. A sale and sheriff's deed under such a judgment could convey no title. Mills v. Pitts, 121 Tex. 196, 48 S. W.2d 941, 942, 84 A.L.R. 319, and cases cited therein. The appellees contend, however, that even if the tax deed was invalid as a muniment of title nevertheless it is of value to them as showing a repudiation by the Adamses of the Ford deed and the mineral reservation contained therein, and the intention of the Adams family thereafter to claim the entire fee simple title to the 480 acres in the Duncan Survey described in the Sheriff's deed. Appellees also maintain that under the authority of the case of Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158, they are not estopped to deny the validity of the Ford deed and its mineral reservation. As we read it that case is concerned with the doctrine of estoppel as to after-acquired title. We do not think it is concerned with the question of estoppel of appellees here to attack the Ford deed but rather that it relates to the question of estoppel to assert another interest in the land subsequently acquired. Our holding here is not that the Adams family, appellees, are estopped from asserting an interest, subsequently acquired by limitation or otherwise, in the minerals reserved in the Ford deed. Our holding is that they are estopped to attack the validity of their Ford deed which reserved to the grantor one-half of the minerals.

█ █ Appellees say that if the void tax deed was ineffective as a muniment of title, nevertheless it served as notice that they were repudiating the Ford deed and the mineral reservation therein and that they were claiming the entire estate in the 480 acres described in the tax deed. With this contention we do not agree. The Adams family were in possession under the Ford deed. They were cotenants with the Duncans as to the minerals. Under the authority of Terry v. Terry, Tex.Civ.App., 228 S. W. 299, and Chapman v. Dickerson, Tex. Civ.App., 223 S.W. 318, such filing of the void tax deed could not operate as such notice of repudiation, unless the Duncans had actual notice of such repudiation, or unless the subsequent acts of ownership and dominion by the Adams family were so notorious and hostile in their character as to

require the Duncans to take notice of the nature and extent of their claim. The Adams family have not shown such notice or acts of ownership and dominion on their part. All their actions in connection with the Duncan Survey since the filing of the tax deed have been those which they could perform under the Ford deed. This character of use did not effect a limitation title against their cotenants. See Luse v. Parmer, Tex.Civ.App., 221 S.W. 1031; Wallace v. Hoyt, Tex.Civ.App., 225 S.W. 425.

█ The Bilbo 160 acre tract was acquired by the Adams family after he was successful in the title suit brought by the Adams family, grantees in the Ford deed, against Bilbo. However, the Duncans were not parties to that suit and the judgment therein is not binding upon the Duncans. Insofar as it affected the reservation of one-half of the minerals in the Duncan Survey, the judgment in the Adams v. Bilbo suit was of no effect as to the Duncans. See Kirby Lumber Corporation v. Southern Lumber Co., Tex.Sup., 196 S.W.2d 387, and cases cited therein. For this reason in the present controversy between the appellants and appellees, we do not consider the Bilbo 160 acre tract separately from the remainder of the Duncan Survey.

When the Duncans filed their cross-action and disclaimer in this suit, they ratified and accepted the Ford deed. When the Adams family accepted the Ford deed, filed it for record, and made use of it and received benefits under it, they ratified it and became estopped to attack its validity. The mineral estate reserved was effectively severed at that time.

We conclude, therefore, that the reservation of minerals in the Ford deed to the Adamses was valid and binding as between the parties; that the tax sale of 1914 was void and did not convey title to the Adamses; and that the Adams family has not perfected limitation title to the mineral estate reserved.

█ The appellants' fourteenth point is that the trial court erred in admitting in evidence over the objection of appellants a document prepared by and certified to by the clerk of the Supreme Court of Texas, containing what purported to be excerpts from

the testimony of eight named witnesses in the trial of cause No. 2156, styled Arthur Burrell et al. v. W. J. B. Adams et al., tried as cause No. 1313 in the District Court of Jasper County, Texas, in 1908, for the reason that appellants were not parties to that suit and are not bound by any testimony given therein. The disputed document contained excerpts from the testimony of various witnesses who testified in the Adams v. Burrell law suit. Of course, under the general rule the testimony of witnesses introduced in another law suit between different parties is inadmissible and that would make this documentary evidence inadmissible. The appellees answer the appellants' attack on this testimony by the argument that it was introduced to show the fact of loss of title by the Adamses in that litigation, the fact that the case was hard fought and to show the claims made by all the parties and that they are a necessary background for the interpretation of all that followed. They also say that since the record in the old case of Adams v. Burrell had been on file in the Supreme Court for 35 years before the trial of the instant case and that they became admissible as ancient documents. We believe that portions of the instruments offered were admissible, but only for the purpose of showing the contentions and claims made, the final disposition of the suit, and the fact that certain testimony was introduced in that case. We do not think they became admissible as ancient documents.

Appellants' eighth point is that the trial court erred in his thirtieth finding of fact wherein the court says, "the Duncans have not shown themselves to be the holders of the interests of five of the seven devisees under the will of William Duncan" for the reason that the evidence showed conclusively that cross-plaintiffs were the heirs and all of the heirs of the devisees under the will of William Duncan to whom the William Duncan 640 acre tract of land was devised. Under this point we must first consider the admissibility of the depositions of Ronald B. Duncan and Charles (Carl) E. Duncan which were offered in evidence by the appellants. When the deposition of Ronald B. Duncan, one of the appellants, was offered, many objections were urged by the appel-

lees. The record is confusing as to what actually transpired in the trial court. Appellees made their objections and the trial judge said "go ahead and the court will pass on it down the line." Thereupon interrogatories and answers were introduced in evidence. At the conclusion of the introduction of cross-interrogatories and answers appellees moved to strike the deposition. No ruling is shown by the court on either the objections or the motion to strike. Thereupon the appellants offered the deposition of Charles (Carl) Edwin Duncan. Appellees then made the same objection to this deposition as they had to the former. This objection was by the court overruled. At the conclusion of the introduction of the interrogatories and answers and cross-interrogatories and answers, appellees, as before, moved to strike the questions and answers. The trial court then said "the same ruling". From this record and from finding of fact No. 30 and conclusion of law No. 3, it can reasonably be concluded that the trial court received the depositions in evidence, but did not pass upon the sufficiency of the evidence in the two depositions to establish descent of the appellants from their forebearers, George W. Duncan and Henry H. Duncan, two of the seven devisees in the Duncan will.

We believe the trial court was correct in his finding of fact that the appellants have not shown themselves to be the owners of the interest of five of seven devisees under the will of William Duncan. The evidence introduced does not connect these appellants as descendants of or heirs of William Duncan, Joseph M. Duncan, Anne C. Duncan, wife of James Duncan, Mary Ann Ford and Sarah LaSell. The appellants contend that since all of the Duncan heirs are cotenants in the minerals reserved in the Ford deed in and under the William Duncan Survey they, the appellants, have the authority to recover for all of such cotenants, under the doctrine that one cotenant may recover all the interest of his cotenants. If their suit were brought against a trespasser or a stranger to the title appellants would have such a right. In this case, however, their suit is against the appellees, the Adams family, who are the owners of the surface

and one-half of the minerals. The appellants and appellees are therefore cotenants of the minerals in and under the Duncan Survey and the rule is different as to them. One cotenant may not recover from his cotenant beyond the interest he establishes in himself. See Hicks v. Southwestern Settlement & Development Corporation, by this court, 188 S.W.2d 915, writ refused, W.O. M.; Steddum v. Kirby Lumber Co. et al., 110 Tex. 513, 221 S.W. 920, and cases cited therein. The appellants are therefore before this court in the position of having presented evidence to the trial court which could not, even if considered and accepted by the trial court as true, have entitled them to the recovery of more than ⅔ths of ½ of the minerals in the Duncan Survey, as the heirs of George W. Duncan and Henry H. Duncan.

In further discussion of this point it must be noted that there are various possible inaccuracies in the testimony presented by the depositions. Such matters, however, should be considered in connection with the weight and credibility of the evidence and not as to its admissibility. The testimony in the depositions is not conclusive and we overrule appellants' eighth point and hold that the evidence contained in the depositions does not conclusively show the descent of appellants as heirs of the two ancestors who were devisees under the will of William Duncan, George W. Duncan and Henry H. Duncan.

We believe, however, that the testimony was admissible in evidence. Objection was made and the point is preserved here by the appellees' counter-point of error No. 2. Appellees contend there that the trial court erred in holding that there was competent evidence before the court that the appellants are among those entitled to devises made by William Duncan. Objection was made to the introduction of the depositions that they were based on hearsay and that they do not afford any way by which the court might determine that they came within the exceptions to the hear-say rule so as to make them admissible; that the sources of the witnesses' information as to family history were not specifically given; that it was not shown that the original sources of information were unavailable; that it was not shown that if the sources of information were declarations of members of the family that such members were dead or otherwise not available at the trial; that it was not shown that if the source was declarations of members of the family, that they were made prior to the beginning of this controversy or litigation, or if the sources were documents, bibles and other instruments that they were made prior to the beginning of this litigation or controversy; that it was further not shown that the declarations or records made, which were the sources of information, were made before descent was cast upon those persons making the declarations or records, and that they are not self-serving. From the reading of the depositions it seems clear that the witnesses are testifying as to matters of family history. The witnesses' relationship to the family may be established by their own testimony. Smith v. Kenney, Tex.Civ. App., 54 S.W. 801. All of the objections made by the appellees to the answers of the witnesses, deponents in the depositions, might be applicable if they were testifying as to some specific declarations. Testimony as to descent, deaths, births, marriages and other such matters making family history and tradition, however, may be testified to when the witness, himself a member of the family, is testifying to them as matters of common repute in the family, without regard to the existence or nonexistence of the conditions set forth in the above objections of the appellees. 17 Texas Juris., pages 600, 604, 605; Smith v. Lynn, Tex.Civ.App., 152 S.W.2d 838. Under this view we believe the depositions were admissible in evidence.

Since the trial court did not consider the testimony contained in the two depositions, it therefore becomes necessary that the judgment of the trial court as to the appellants be reversed and remanded for a new trial. If the testimony in such depositions were of such a nature as to show conclusively that appellants are the descendants, and all the descendants, of George W. Duncan and Henry H. Duncan, we believe that the record in this case would require that judgment be here rendered in their favor for recovery of ⅔ths of ½, that is, ⅓th of the

minerals in and under the Duncan Survey. The testimony is not of that nature, however, and the sufficiency of the testimony in that respect must be for the trial court to decide upon another trial.

Reversed and remanded.